(No. 82347.—

DOWD & DOWD, LTD., Appellee and Cross-Appellant, v. NANCY GLEASON *et al.*, Appellants and Cross-Appellees.

*Opinion filed March 19, 1998.*

BILANDIC and HEIPLE, JJ., took no part.

Frank K. Heap and James A. Romanyak, of Bell, Boyd & Lloyd, and Jeffrey M. Marks, all of Chicago, for appellants Nancy J. Gleason *et al.*

Douglas G. Shreffler, of Chicago, appellant *pro se.*

Dan K. Webb, Scott J. Szala, Christopher S. Canning and Nancy L. Carey, of Winston & Strawn, of Chicago, for appellee.

Todd A. Smith and Dennis A. Rendleman, of Springfield, for *amicus curiae* Illinois State Bar Association.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Dowd & Dowd, Ltd., a law firm, brought this action against two of its former members, Nancy J. Gleason and Douglas G. Shreffler, and the law

firm that they formed, Gleason, McGuire & Shreffler, following their departure from Dowd & Dowd. The plaintiff sought imposition of a constructive trust on the new firm's fee income, an accounting, and compensatory and punitive damages for breach of fiduciary duty, breach of contract, and other theories of recovery. Gleason and Shreffler filed a counterclaim, seeking amounts due under a stock repurchase agreement and sanctions. The parties submitted cross-motions for summary judgment. The trial judge denied the defendants' request for sanctions and denied the defendants' motion for summary judgment on the part of the plaintiff's second-amended complaint that sought recovery for breach of fiduciary duty; with regard to that count, the trial judge certified a question of law. The trial judge otherwise ruled in favor of the defendants on the issues then contested. The plaintiff appealed, and the appellate court affirmed in part and reversed in part. 284 Ill. App. 3d 915. We allowed the defendants' petition for leave to appeal (166 Ill. 2d R. 315(a)), and the plaintiff additionally raises here several issues decided adversely to it by the appellate court (155 Ill. 2d R. 318(a)).

Because of the procedural posture of this case, the summary of relevant facts must be derived from the pleadings, depositions, and affidavits on file. These facts are fully summarized in the appellate court opinion and will receive only brief restatement here.

The law firm of Dowd & Dowd was organized as a professional corporation. Ownership of the firm consisted of 72 shares, which were divided in the following manner: Michael Dowd, 35 shares; Nancy Gleason, 10 shares; Kenneth Gurber, 10 shares; Robert Yelton III, 10 shares; and Douglas Shreffler, 7 shares. Dowd, however, had obtained from each of the other owners a proxy giving him the right to vote one of that person's shares, and therefore Dowd effectively controlled a total

of 39 shares, while the four other owners together controlled a total of 33 shares.

The firm's principal client prior to the split up was Northbrook Excess and Surplus Insurance Company, a subsidiary of the Allstate Insurance Company. Billings to that client were more than $6 million in 1990, representing about 58% of Dowd & Dowd's total revenue for that year. The work for Allstate mainly involved environmental coverage.

By November or December 1990, the members who were planning to leave the Dowd firm had obtained office space, furniture, telephones, and other equipment preparatory to their departure. They had also presented their business plan to Harris Bank, which had approved a line of credit for the new firm, to be known as Gleason, McGuire & Shreffler.

On December 31, Gleason and Shreffler resigned from Dowd & Dowd, delivering the news to Dowd in person at his home. Later that day they went to Allstate's offices, and there they talked to two executives, Lynn Crim and George Riley; Crim was vice-president of Allstate's claims department, and Riley was director of the company's environmental claims department. Crim and Riley had authority to choose counsel to represent Allstate, and at the meeting on December 31 Gleason and Shreffler obtained from them responsibility for handling Allstate's cases that were currently with Dowd & Dowd. In the weeks that followed, the new firm of Gleason, McGuire & Shreffler hired a number of persons previously employed at Dowd & Dowd, including associate lawyers and office personnel.

The plaintiff sought recovery from the defendants on a variety of theories, and the defendants filed a counterclaim. The plaintiff's second-amended complaint comprised seven counts. Count I was against Gleason and Shreffler individually for breach of fiduciary duty. Count

II was against Gleason and Shreffler for breach of contract—the employment agreements signed by Gleason and Shreffler. Count II alleged several distinct breaches by the defendants, including their failure to provide 90 days' notice of their departure, as required by the agreement, their subsequent solicitation of Dowd & Dowd clients, prohibited by the noncompetition provision in the agreement, and their subsequent solicitation of Dowd & Dowd personnel, also prohibited by the agreement. Count III was against Gleason, Shreffler, and their new firm, Gleason, McGuire & Shreffler, and alleged tortious interference with contractual relations, based on their subsequently obtaining Allstate as a client. Counts IV and V, which are not at issue in this appeal, sought recovery from Gleason, Shreffler, and their new firm on theories of tortious interference with contractual relations for hiring Dowd personnel and obtaining Dowd clients. Count VI, brought against Gleason, Shreffler, and their new firm, alleged civil conspiracy. Count VII, not at issue in this appeal, sought recovery from Gleason, Shreffler, and their new firm on a theory of willful and wanton misconduct. The defendants answered the second-amended complaint, alleged a number of affirmative defenses, and filed a five-count counterclaim.

The parties later filed cross-motions for summary judgment. The parties submitted extensive evidence in support of their respective motions, including affidavits, transcripts of depositions, and other documents. The plaintiffs attempted to show that the defendants, prior to their departure from the Dowd firm, had engaged in extensive preparations for establishing their new firm. We have already noted some of the steps taken by the defendants. The plaintiff also submitted evidence to show that the defendants, while still employed by the Dowd firm, had obtained a federal employer identifica-

tion number and had discussed their new venture with members of the Dowd & Dowd staff.

After protracted proceedings, the trial judge entered an order that granted the following relief: summary judgment in favor of the firm Gleason, McGuire & Shreffler on counts III (interference with prospective advantage), VI (civil conspiracy), and VII (willful and wanton conduct) of the plaintiff's second-amended complaint; summary judgment in favor of Gleason and Shreffler on counts II (breach of contract) and III (tortious interference with prospective economic advantage) of the second-amended complaint; and denial of defendants' motion for sanctions. The judge denied Gleason and Shreffler's motion for summary judgment on count I (breach of fiduciary duty) and certified a question of law, pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)), regarding that count. The judge also entered judgment in favor of Gleason for $100,000 and in favor of Shreffler for $70,000 on the part of the defendants' counterclaim seeking compensation for a breach of a share repurchase agreement in their employment contracts.

The appellate court accepted the question of law certified by the trial court. Separately, the plaintiff appealed the portions of the judgment adverse to it, and the defendant appealed the denial of sanctions. As to the certified question, the appellate court concluded that the plaintiff had stated a cause of action for breach of fiduciary duty, based on evidence of the defendants' pretermination activities. With respect to the other issues that the parties raise before this court, the appellate court upheld the dismissal of count VI, which seeks recovery against the new firm on a conspiracy theory; reinstated count III, seeking recovery on a theory of tortious interference with prospective economic advantage; reinstated the portion of the count II seeking recovery

on a breach of contract theory for the defendants' failure to provide written notice of their departure from the Dowd firm; affirmed the trial court's grant of summary judgment to the defendants on the portion of count II seeking recovery on a breach of contract theory for soliciting clients after termination of their employment; and denied the defendants' requests for sanctions. We allowed the defendants' petition for leave to appeal. 166 Ill. 2d R. 315(a). Pursuant to Rule 318, the plaintiff also raises several issues decided against it by the appellate court. 155 Ill. 2d R. 318. We granted leave to the Illinois State Bar Association to submit a brief as *amicus curiae* in support of the defendants. 155 Ill. 2d R. 345. For the reasons set out below, we now affirm in part and reverse in part the judgments of the appellate and circuit courts, and we remand the cause to the circuit court of Cook County for further proceedings.

I

The trial judge certified the following question of law, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

"Whether the plaintiff law firm, a professional corporation, has a cause of action for breach of fiduciary duties against its former Officers or Directors who:

a. Departed the plaintiff firm without notice to the other Officers or Directors;

b. Had accomplished substantial planning of their departure before leaving; and planned to solicit business or clients of Dowd and Dowd;

c. Had made substantial arrangements, in terms of new office space, telephones, equipment, obtaining a federal employer identification number, etc., without knowledge of the Officers or Directors;

d. Where more than one Officer or Director, and other support staff, left simultaneously, from the Plaintiff firm;

e. But, where there is no evidence that legal clients or legal business were solicited or sought before the departure. On the other hand, where there is no evidence that

the defendants, departing Officers and Directors[,] solicited clients or sought the firm's legal business before departing, should the claim of plaintiff, a professional corporation[,] be dismissed (the Court certifies subparagraph e above over Plaintiff's objection as to the question of the existence of solicitation)."

Count I of the second-amended complaint forms the basis for the certified question, which asks us to assume the existence of certain facts. Although the matter is framed as a question of law, we believe that any answer here would be advisory and provisional, for the ultimate disposition of count I will depend on the resolution of a host of factual predicates. For proof that factual issues remain, we need look no further than the trial judge's ruling on the defendants' motion for summary judgment on this count: in denying the motion, the trial judge stated that issues of material fact remained, which precluded entry of summary judgment. The judge observed that at some point departing partners are duty-bound to disclose their plans to leave a firm; the judge noted a number of factual questions, such as the number of predeparture meetings by the departing members, the number of persons leaving the firm, and the taking of firm documents, as bearing on this issue.

Moreover, the circumstances mentioned in the certified question do not represent the full range of allegations underlying the count, even though the certified question was seemingly designed to incorporate the various allegations of this part of the complaint. Although the question assumes the answers to certain allegations, it omits others. For example, the question notes that more than one person left the firm, without specifying how many did so. Elsewhere, the question states that "substantial planning" occurred prior to the defendants' departure from the firm, but left unspecified are the types of things that the defendants did in preparing for their new venture. The parties sharply dispute many of

these matters, and it is apparent that a number of unresolved variables are at work in this case, making resolution of the certified question meaningless at this point in the proceedings. Thus, given the provisional nature of the inquiry, the importance of the issue involved, and the absence of a fully developed factual record, we do not believe that it is necessary or advisable for us to attempt to provide an answer to the question framed by the trial judge.

Still, it is appropriate here to set out, in a general way, some of the relevant ethical guideposts. In the proceedings below, Judge Gillis observed that it is difficult to locate the "fence," or dividing line, between permissible and impermissible conduct in these circumstances. We agree with the trial judge's assessment that these boundaries cannot be drawn with mathematical precision. The New York Court of Appeals aptly summed up the state of the law in this area when it observed, "It is unquestionably difficult to draw hard lines defining lawyers' fiduciary duty to partners and their fiduciary duty to clients." *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 119, 653 N.E.2d 1179, 1183, 629 N.Y.S.2d 1009, 1013 (1995).

Lawyers who are preparing to leave a law firm face a dilemma, caught between the fiduciary obligations they owe the other members of their firm, on one hand, and the duty of being able to adequately represent clients who choose to follow them to their new place of employment, on the other hand. As a practical matter, then, cases have recognized that some preliminary preparations by lawyers who are leaving a firm must be allowed, and that it is appropriate for lawyers in these circumstances to make arrangements, prior to their departure, to obtain new office space, equipment, and other materials necessary for the practice of law. *Bray v. Squires*, 702 S.W.2d 266 (Tex. Ct. App. 1985);

see also Restatement (Second) of Agency § 393, Comment *e* (1958) (recognizing that agent may make certain preparations for own venture prior to termination of agency). Discussing a similar question, the Supreme Court of Massachusetts stated, in *Meehan v. Shaughnessy*, 404 Mass. 419, 435, 535 N.E.2d 1255, 1264 (1989):

> "Here, the judge found that Meehan and Boyle made certain logistical arrangements for the establishment of MBC [*i.e.*, the new firm]. These arrangements included executing a lease for MBC's office, preparing lists of clients expected to leave Parker Coulter for MBC, and obtaining financing on the basis of these lists. We believe these logistical arrangements to establish a physical plant for the new firm were permissible ***, especially in light of the attorneys' obligation to represent adequately any clients who might continue to retain them on their departure from Parker Coulter."

For the reasons mentioned, we do not believe that lawyers are necessarily bound by the same fiduciary constraints that apply to nonlawyer officers and directors who are seeking to leave positions in commercial entities. See *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160-61 (1993); *Preferred Meal Systems, Inc. v. Guse*, 199 Ill. App. 3d 710, 724-25 (1990).

One of the major questions underlying the present action is whether the defendants solicited the Allstate business for their new firm before they left Dowd & Dowd. The question certified by the trial judge assumes that no pretermination solicitation occurred; the final order entered by the judge, which contains the certified question and rulings on the other counts, includes a finding that there is "no credible or admissible evidence that defendants solicited the Allstate account prior to December 31, 1990," the date of their departure from the Dowd firm. The plaintiff contends that the evidence demonstrates that the defendants engaged in pretermination solicitation, while the defendants argue that there is no competent evidence of pretermination solici-

tation. Strictly speaking, the judge's finding is not before us. As noted previously, the certified question arises from count I, on which the trial judge denied the defendants' motion for summary judgment. The denial of a motion for summary judgment is not a final judgment (*Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 909 (1994)), for it does not terminate the litigation on that part of the complaint (see *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989)), and therefore an order denying summary judgment is not by itself appealable. The issue before us concerning count I is framed by the certified question, which, as we have noted, assumes that no solicitation occurred. Still, we may go beyond the limits of a certified question in the interests of judicial economy (*Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995); *Schrock v. Shoemaker*, 159 Ill. 2d 533, 537 (1994)), and we believe that such action is appropriate here.

We recognize, as the defendants point out, that Lynn Crim and George Riley of Allstate testified in their depositions that they did not know about the defendants' plans to form a new firm until December 31, 1990, when the defendants resigned from Dowd & Dowd. The plaintiff refers to other evidence, however, to support its theory that Allstate was obtained as a client prior to the defendants' departure. The plaintiff cites the testimony of Leslie Henkels, who was defendant Gleason's chief paralegal at Dowd & Dowd. Henkels testified in her deposition that before December 31, 1990, she learned from Gleason, Shreffler, or one of Gleason's sisters, Judith, that Allstate would be a client of the new firm. A statement to Henkels by either of the individual defendants, Gleason or Shreffler, would be an admission, and therefore Henkels' testimony regarding that would be admissible. Henkels further testified that on December 31, 1990, Gleason faxed her a letter over

George Riley's signature transferring Allstate files from Dowd & Dowd to the new firm; according to Henkels, Gleason instructed her to copy the letter and to place it on the desks of nondeparting lawyers at Dowd & Dowd. Henkels further testified that Gleason called back later that day and, on what Gleason characterized as advice of counsel, told Henkels to collect the copies of the letter she had previously distributed and to destroy them. Henkels had a third telephone conversation with Gleason on December 31; on that occasion, Gleason told Henkels that they were on their way to Michael Dowd's house to tell him of their resignation from the firm. The plaintiff argues that Henkels' deposition undercuts the defendants' contention that on December 31, 1990, the defendants informed Michael Dowd of their departure before they talked to the Allstate executives.

The plaintiff also cites a credit memorandum prepared by David J. Varnerin, of Harris Bank. The memorandum states, "Allstate has been urging the Gleasons to break away from Dowd & Dowd and start their own firm"; "Allstate stands ready to give them as much business as they can handle"; "Discussions have been held with their principal client—Allstate. The firm has been assured that their invoices will be paid promptly within 30 days." These statements lend support to the plaintiff's contention that the defendants had obtained Allstate as a client prior to their departure from Dowd & Dowd.

Opposing this interpretation, the defendants point to an affidavit submitted by Varnerin in the proceedings below. In the affidavit, Varnerin states that no one associated with the new firm told him that Allstate or any other Dowd client had been contacted regarding the plan to leave the Dowd firm. Varnerin also asserts that his statement concerning Allstate's readiness to give them business was simply his conclusion. Regarding the statement in the credit memorandum, "Discussions have

been held with their principal client—Allstate. The firm has been assured that their invoices will be paid promptly within 30 days," Varnerin insists in his affidavit that he was referring only to discussions that Dowd & Dowd had with Allstate, and that the word "firm" in the second sentence—"The firm has been assured \*\*\*"—refers to Dowd & Dowd. We would observe, however, that the remainder of the paragraph in the credit memorandum conflicts with the explanation later given in Varnerin's affidavit. In the credit memorandum, the paragraph goes on to state, "And, since the firm will have the prior firm's office administrator, we can reasonably assume that bills will be generated and sent in a very prompt manner." Dowd & Dowd obviously was the "prior firm." Although the affidavit submitted by Varnerin was not directly contradicted by anything filed by the plaintiff, the affidavit and credit memorandum seem in certain respects to be irreconcilable.

In rejecting the request of the defendants for sanctions, which was based on the defendants' argument that the action was not well grounded in fact, the appellate court explained, "[P]laintiff was not obligated to believe Riley and Crim and, in fact, elicited credible testimony from other witnesses refuting Riley's and Crim's claims." 284 Ill. App. 3d at 935. This statement is also apt here, and we believe that questions of fact remain concerning the defendants' possible pretermination solicitation of Allstate.

Cases have recognized that pretermination solicitation of clients by members of an existing firm for the benefit of a new firm rises to a breach of fiduciary duty. *Vowell & Meelheim, P.C. v. Beddow, Erben & Bowen, P.A.*, 679 So. 2d 637, 639 (Ala. 1996); *In re Silverberg*, 81 A.D.2d 640, 641, 438 N.Y.S.2d 143, 144 (1981). As one commentator has explained:

"Although the ethical principles relating to the attorney-client relationship constrain a fairness inquiry

concerning postwithdrawal competition by a former agent, pre-termination competition by firm members is another matter. The principle of client choice is not, or at least should not be, so overpowering that it shields all pre-termination competition by members of a firm." R. Hillman, *Law Firms and Their Partners: The Law and Ethics of Grabbing and Leaving*, 67 Tex. L. Rev. 1, 27 (1988).

The case law supports the trial judge's view, expressed in the proceedings below, that while lawyers who are planning to leave a firm may take preliminary logistical steps of obtaining office space and supplies, they may not solicit clients for their new venture. In *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 119-20, 653 N.E.2d 1179, 1183, 629 N.Y.S.2d 1009, 1013 (1995), the New York Court of Appeals observed:

"[A]s a matter of principle, preresignation surreptitious 'solicitation' of firm clients for a partner's personal gain—the issue posed to us—is actionable. Such conduct exceeds what is necessary to protect the important value of client freedom of choice in legal representation, and thoroughly undermines another important value—the loyalty owed partners (including law partners), which distinguishes partnerships (including law partnerships) from bazaars."

Thus, proof of pretermination solicitation of clients by the defendants may establish a breach of their fiduciary duties.

Although much of the focus in the briefs is on the question of pretermination solicitation, the plaintiff points to other acts as also supporting its argument that the defendants breached their fiduciary duty. We note in passing some of the other allegations in the complaint, which might or might not be true. For example, the plaintiff alleges that the departing members improperly decided to pay off the existing firm's line of credit, in an effort to reduce their own potential liabilities and to improve their positions as borrowers for their new firm. The plaintiff believes that this decision by the

departing members was a breach of the fiduciary duty they owed to the existing firm. In addition, the plaintiff alleges that the departing members usurped a corporate opportunity by hiring for the new firm persons who had been interviewed for positions at the Dowd firm. If established, this allegation could also support a claim for breach of fiduciary duty.

The record on appeal thus discloses a number of factual variables which present a range of possible conduct by the defendants but remain unresolved. Relevant here are the following comments by the court in *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 653 N.E.2d 1179, 629 N.Y.S.2d 1009 (1995):

"Given the procedural posture of the case before us, plainly this is not an occasion for drawing the hard lines. Factual variations can be crucial in determining whether an attorney's duties have been breached, and we cannot speculate as to what conclusions will follow from the facts yet to be found in the case before us. We can, however, set out certain broad parameters ***.

At one end of the spectrum, where an attorney is dissatisfied with the existing association, taking steps to locate alternative space and affiliations would not violate a partner's fiduciary duties. That this may be a delicate venture, requiring confidentiality, is simple common sense and well illustrated by the eruption caused by defendants' announced resignation in the present case. As a matter of ethics, departing partners have been permitted to inform clients with whom they have a prior professional relationship about their impending withdrawal and new practice, and to remind the client of its freedom to retain counsel of its choice [citations]. Ideally, such approaches would take place only after notice to the firm of the partner's plans to leave [citations].

At the other end of the spectrum, secretly attempting to lure firm clients (even those the partner has brought into the firm and personally represented) to the new association, lying to clients about their rights with respect to the choice of counsel, lying to partners about plans to

leave, and abandoning the firm on short notice (taking clients and files) would not be consistent with a partner's fiduciary duties [citations]." *Graubard*, 86 N.Y.2d at 120-21, 653 N.E.2d at 1183-84, 629 N.Y.S.2d at 1013-14.

This is a fact-intensive inquiry, and on remand the finder of fact will have to resolve a number of factual disputes before determining whether the defendants breached their fiduciary duty. Because of the provisional nature of the inquiry and the many unresolved factual questions that remain, mentioned above, we do not attempt on this occasion to offer an answer to the question certified by the trial judge.

## II

We now turn to the other issues raised in this appeal. Count II of the plaintiff's second-amended complaint sought recovery from the defendants for breach of contract on several distinct grounds. The contracts involved were the employment agreements signed by Gleason and Shreffler as employees of the Dowd firm. Relevant here are the allegations in count II that the defendants breached their employment contracts by failing to give the Dowd firm 90 days' notice prior to their departures, by later attempting to solicit clients of the Dowd firm, and by later attempting to solicit other employees of the Dowd firm. According to count II, the employment agreements required the defendants to provide 90 days' notice of their intended departure from the firm and barred the defendants from subsequently representing Dowd & Dowd clients. The trial court granted summary judgment for the defendants on all three theories of recovery. On appeal, the plaintiff challenged the rulings with respect to the 90-day notice provision and the noncompetition covenant; the plaintiff did not challenge the ruling with respect to the solicitation of Dowd & Dowd employees. The appellate court held in favor of the plaintiff on the 90-day notice provi-

sion and in favor of the defendants on the noncompetition covenant. The parties challenge the appellate court's determinations, and we will consider these questions in turn.

## A

The defendants argue that the appellate court erred in ruling in favor of the plaintiff on the portion of count II of the second-amended complaint that alleged that the defendants breached their employment agreements by failing to give advance notice of their intended departures from the Dowd firm. We agree with the defendants that they did not violate the employment agreements, given the timing of their departures.

Paragraph 4 of the employment agreements signed by Gleason and Shreffler states:

> "4. *Term of Employment*. The term of the Employee's employment hereunder shall be from the date hereof until the end of the Corporation's current fiscal year and from year to year thereafter, subject to termination at any time upon 90 days['] prior written notice either by the Corporation (acting by unanimous vote of the Board of Directors, excluding the Employee if he is a Board member) to the Employee or by the Employee to the Corporation."

The Dowd firm's fiscal year ended on December 31. The trial judge found that the defendants did not violate the notice provisions in their employment contracts; the judge construed the provision to mean that no notice at all was required during the last quarter of the year, an interpretation not advanced by the defendants. The appellate court took a different view, concluding that 90 days' written notice was always required, even at the end of the year.

The defendants argue that the terms of the contract must be enforced as they appear, and that the appellate court's interpretation departs from the text of the provision and renders a portion of it surplusage. The defendants maintain that notice is not required on the last

day of the year, for the employment term expires then by its own terms. In response, the plaintiff maintains that the appellate court's requirement of 90 days' notice correctly fulfills the parties' intent by ensuring greater continuity in representing and serving clients when attorneys decide that they wish to leave.

The terms of an agreement, if not ambiguous, should generally be enforced as they appear (*P.A. Bergner & Co. v. Lloyds Jewelers, Inc.*, 112 Ill. 2d 196, 203 (1986)), and those terms will control the rights of the parties (*Midland Management Co. v. Helgason*, 158 Ill. 2d 98, 103 (1994)). Moreover, any ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision. *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 493 (1987).

We agree with the defendants that the terms of the agreement are not ambiguous. As the defendants observe, the agreement affords an employee two alternative ways of terminating his or her employment: first, by not renewing that employment when it expires by its own terms each December 31, the close of the firm's fiscal year, or, second, by providing 90 days' written notice of termination. When Gleason and Shreffler informed Michael Dowd on December 31, 1990, that they would no longer be members of the firm, they fulfilled their obligations under the language of paragraph 4 of the employment contract. To require 90 days' notice in all instances, as the plaintiff argues and the appellate court held, makes meaningless the contract phrase "from year to year thereafter," regarding the period of employment. Courts will generally avoid interpretations that render contract terms surplusage (*Hufford v. Balk*, 113 Ill. 2d 168, 172 (1986)), and accordingly we reject the plaintiff's interpretation.

## B

The plaintiff, seeking cross relief, contends that the

appellate court erred in refusing to enforce the noncompetition covenants contained in Gleason's and Shreffler's employment agreements. As we have noted, these covenants formed one of the bases for the plaintiff's breach of contract claim, in count II, against Gleason and Shreffler.

The noncompetition clause at issue states:

"10. *Nonsolicitation.* During the term of this Agreement and for a period of two (2) years following the termination of this Agreement, the Employee will not directly or indirectly, solicit or endeavor to entice away any clients of the Corporation without the prior written consent of the Corporation. For the purpose of this subsection, the term 'solicit' shall mean to call or contact or to lend assistance in any way to any person or entity in calling or contacting a client of the Corporation in a manner detrimental to the business of the [C]orporation ***."

The appellate court believed that the provisions violated Rule 5.6 of the Rules of Professional Conduct and that Rule 5.6 therefore precluded their enforcement. 284 Ill. App. 3d at 932-33; see also *Stevens v. Rooks Pitts & Poust*, 289 Ill. App. 3d 991 (1997) (following decision of appellate court in this case and applying rule to preexisting contract). Rule 5.6, which took effect August 1, 1990, after the employment agreements in question were signed, provides:

"A lawyer shall not participate in offering or making:

(a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement ***." 134 Ill. 2d R. 5.6(a).

The plaintiff contends that Rule 5.6 should not be applied to invalidate contract clauses entered into prior to the effective date of the rule, noting that Gleason signed her employment agreement in 1988 and that Shreffler signed his in 1989. The plaintiff maintains that the language of the rule indicates that it is not to be given retroactive effect and, moreover, that retroactive opera-

tion would result in an unconstitutional impairment of contracts.

We believe that Rule 5.6 may have retroactive effect and therefore bars the present enforcement of noncompetition covenants entered into prior to the effective date of the rule. Contrary to the plaintiff's argument, the prohibition of the rule is not expressed in the future tense and is not limited by its terms to contract provisions formed after its effective date. We recognize, of course, that Rule 2—108 of the Code of Professional Responsibility, the predecessor to Rule 5.6, did not contain a similar prohibition. Still, "the law cannot enforce a contract which it prohibits" (*Sibley v. Health & Hospitals' Governing Comm'n*, 22 Ill. App. 3d 632, 637 (1974)), and we believe that enforcement of the provisions at issue would violate the important considerations of public policy that underlie the prohibition found in Rule 5.6. The rule is designed both to afford clients greater freedom in choosing counsel and to protect lawyers from onerous conditions that would unduly limit their mobility. 2 G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 5.6:201, at 824 (Supp. 1997). Consistent with that rationale, we conclude that the noncompetition covenants in the employment agreements conflict with Rule 5.6 and may not be enforced.

The plaintiff also contends that application of Rule 5.6 to the contract provisions at issue here would result in an unconstitutional impairment of contracts, in violation of the Illinois Constitution (Ill. Const. 1970, art. I, § 16 ("No *** law impairing the obligation of contracts *** shall be passed")). As a general principle, however, judicial decisions are not subject to the prohibition against impairment of contracts. *Phelps v. Elgin, Joliet & Eastern Ry. Co.*, 28 Ill. 2d 275, 280 (1963); *Prall v. Burckhartt*, 299 Ill. 19, 42 (1921). Thus, if the promulga-

tion of Rule 5.6 is understood to be a judicial decision and not an act of legislation, then the plaintiff cannot be heard to argue that application of the rule to the contract provisions at issue here results in an unconstitutional impairment of contracts. Assuming, without deciding, that judicial action like the promulgation of a court rule may fall within the interdiction of the contracts clause, as the plaintiff suggests, we still do not believe that such an objection will lie here. In resolving this question, we will apply federal case law interpreting the corresponding provision of the United States Constitution. U.S. Const., art. I, § 10. Under this line of authority, the first step in determining whether the contract clause has been violated is to ask whether the change in law substantially impairs a contractual relationship. *General Motors Corp. v. Romein,* 503 U.S. 181, 186, 117 L. Ed. 2d 328, 337, 112 S. Ct. 1105, 1109 (1992); *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 57 L. Ed. 2d 727, 736, 98 S. Ct. 2716, 2722 (1978). "The severity of the impairment measures the height of the hurdle the state legislation must clear." *Allied Structural Steel,* 438 U.S. at 245, 57 L. Ed. 2d at 736-37, 98 S. Ct. at 2723. We do not believe that the change in law at issue here operated as a substantial impairment of the parties' contract. The noncompetition provision represented a small part of the contract, and it came into play only when an employee left the Dowd firm. Accordingly, we do not believe that the mandated elimination of that provision represented an invalid impairment of contract.

Moreover, courts will not enforce contract terms that violate public policy. *American Federation of State, County & Municipal Employees v. Department of Central Management Services,* 173 Ill. 2d 299, 317-18 (1996); *Beneficial Development Corp. v. City of Highland Park,* 161 Ill. 2d 321, 330-31 (1994). As we have noted, the

foundation for Rule 5.6 rests on considerations of public policy, and it would be inimical to public policy to give effect to the offending provisions.

## III

The defendants next argue that the appellate court erred in reinstating count III of the plaintiff's second-amended complaint, which sought recovery on a theory of tortious interference with prospective economic advantage. Count III alleged that the defendants, prior to their departure from Dowd & Dowd, improperly solicited Allstate as a client and took various steps to establish a new firm that would be capable of representing Allstate once the departure was completed. The trial judge had granted the defendants summary judgment on this count.

A motion for summary judgment may be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996). In ruling on a motion for summary judgment, the trial court must consider the pleadings, depositions, and affidavits strictly against the movant and in favor of the opposing party. *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980). Summary judgment "is a drastic means of disposing of litigation," and therefore it should be granted only when the movant's right to the relief "is clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Our review of an order granting summary judgment is *de novo. Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390 (1993).

In *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511 (1991), this court described the elements of a cause of action for tortious interference with prospective economic advantage: "It is generally recognized by the Il-

linois courts \*\*\* that to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. [Citations.]" As the appellate court below found, although a lawyer-client relationship is terminable at the will of the client (*In re Estate of Callahan*, 144 Ill. 2d 32, 37-38 (1991)), the gravamen of the charge is interference with an existing relationship, and the absence of an enforceable contract does not bar recovery (*Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1013 (1995)).

The defendants contend that allowing the plaintiff to go forward with a cause of action under count III is incompatible with the substantial body of case law recognizing that a client may discharge an attorney at any time, with or without cause. *Balla v. Gambro, Inc.*, 145 Ill. 2d 492, 503 (1991); *In re Estate of Callahan*, 144 Ill. 2d 32, 37-38 (1991); *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 227-28 (1979). We do not agree.

"Third party inducement of breaches of contract or unjustifiable interference by third parties in business relationships between attorneys and clients have been held actionable in numerous cases." *Herman v. Prudence Mutual Casualty Co.*, 41 Ill. 2d 468, 472-73 (1969). The focus here is not on the conduct of the client in terminating the relationship, but on the conduct of the party inducing the breach or interfering with the expectancy. Unlike the actions involved in the cases recognizing the client's right of discharge, the plaintiff's claim here is directed not at the client, but at the party allegedly

responsible for causing the termination of the relationship. Moreover, to prevail on the claim, a plaintiff must show not merely that the defendant has succeeded in ending the relationship or interfering with the expectancy, but "purposeful interference"—that the defendant has committed some impropriety in doing so. Restatement (Second) of Torts § 766B, Comment *a* (1979) ("In order for the actor to be held liable, this Section requires that his interference be improper"); *Mittelman v. Witous*, 135 Ill. 2d 220, 251 (1989); *La Rocco v. Bakwin*, 108 Ill. App. 3d 723, 730 (1982).

In the present case, the plaintiff alleges in count III of the second-amended complaint that the defendants committed the tort through their various predeparture activities. If the defendants engaged in the actions alleged by the plaintiff—and on review of an order granting summary judgment, we must assume that they did— then we believe that a cause of action for tortious interference with prospective economic advantage could lie. We believe that there are material issues of fact that preclude entry of summary judgment in favor of the defendants on this count. As we have noted, in discussing the scope and nature of the defendants' fiduciary duties, numerous factual questions exist regarding the defendants' conduct prior to their departure from the Dowd firm, including the possible solicitation of Allstate as a client, and the steps taken by the defendants in establishing their new firm.

IV

In its second and final contention as cross-appellant, the plaintiff argues that the appellate court erred in dismissing the conspiracy count, count VI, brought in the plaintiff's second-amended complaint against the new firm, Gleason, McGuire & Shreffler, formed by the departing members. The appellate court believed that the conspiracy count was duplicative of other counts of the complaint.

Illinois recognizes civil conspiracy as a distinct cause of action. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). Although the allegations in the conspiracy count against the firm of Gleason, McGuire & Shreffler mirror allegations made elsewhere in the complaint, the elements of the cause of action are distinct, and are not subsumed under another theory of recovery pleaded by the plaintiff. In addition, Gleason, McGuire & Shreffler is a named defendant in the civil conspiracy count, and not elsewhere. We agree with the plaintiff that dismissal of the conspiracy count as duplicative of other theories of recovery alleged in the complaint is, at this point in the proceedings, premature. A plaintiff may plead and prove multiple causes of action, though it may obtain only one recovery for an injury. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 172 (1994); *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 558 (1980). Here, the conspiracy count simply represents an alternative theory of liability.

V

The defendants raise one further issue on appeal, contending that the appellate court improperly denied their motions for sanctions against the plaintiff and its counsel. The defendants sought sanctions on two separate grounds, arguing that the plaintiff's circuit court pleadings and the plaintiff's appellate court brief violated rules of this court. The appellate court denied relief on both grounds, and the defendants renew here their requests for sanctions.

Supreme Court Rule 137 addresses the signing of pleadings, motions, and other papers in the circuit courts. The rule provides, in pertinent part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well

grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." 155 Ill. 2d R. 137.

Rule 137 also authorizes a court to impose sanctions on lawyers and parties who violate its terms.

Because Rule 137 is penal in nature, it will be strictly construed. *Reyes v. Compass Health Care Plans*, 252 Ill. App. 3d 1072, 1078 (1993); see *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 467 (1990) (discussing predecessor provision, section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611)). The decision whether to impose sanctions under Rule 137 is committed to the sound discretion of the circuit judge, and that decision will not be overturned unless it represents an abuse of discretion. *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 1001 (1996); *Bennett & Kahnweiler, Inc. v. American National Bank & Trust Co.*, 256 Ill. App. 3d 1002, 1007 (1993).

The judge here denied the defendants' request for sanctions under Rule 137, and we cannot say that his determination was an abuse of discretion. The defendants first argue that the plaintiff initiated the present action without having made reasonable inquiry. In support of this contention, the defendants point to Michael Dowd's statement in his deposition that the present action was brought even though no investigation had been conducted into the question whether the defendants solicited the Allstate account before leaving the Dowd firm. As we have already noted, however, evidence exists supporting the plaintiff's claim that pretermination solicitation occurred, and therefore we do not believe that sanctions would be appropriate under this theory.

The defendants next argue that the suit was not

well grounded in fact because Allstate's Riley and Crim both repeatedly denied, in their deposition testimony, that any solicitation of the client occurred before December 31, 1990, when Gleason and Shreffler left the Dowd firm. Again, as we have noted, other evidence exists that supports the plaintiff's contention; as the appellate court observed, the plaintiff "was not obligated to believe Riley and Crim." 284 Ill. App. 3d at 935.

The defendants also argue that existing law did not support the plaintiff's breach of contract claims against Gleason and Shreffler for their alleged violations of noncompetition provisions in their employment agreements. As we concluded earlier in this opinion, the noncompetition provisions are unenforceable. We do not agree with the defendants, however, that the theory of recovery was so clearly lacking in merit that sanctions would be warranted under Rule 137.

Finally, the defendants contend that suit was brought for an improper purpose, citing Michael Dowd's comment in his deposition that he initiated the action to obstruct Gleason and Shreffler in their efforts to take away the Dowd firm's major client. We do not agree with the defendants that Dowd's remark betrays a sanctionable purpose for the litigation. The plaintiff may ultimately prevail on several theories of recovery against the defendants, and we cannot say that the action lacks a proper purpose.

Separately, the defendants argue that sanctions should be imposed for the brief filed by the plaintiff as appellant in the appellate court; the defendants contend that the statement of facts appearing in the plaintiff's brief was improperly argumentative. Supreme Court Rule 341(e)(6) requires an appellant to provide an accurate and fair statement of facts (155 Ill. 2d R. 341(e)(6)); Rule 375(a) permits a court to impose sanctions on a party for violations of our appellate practice rules (155 Ill. 2d R. 375(a)).

The defendants have attached to their brief before this court a copy of the disputed portions of the plaintiff's appellate court brief. We have examined the challenged brief, and we agree with the appellate court's assessment that the contents of the brief do not warrant the imposition of sanctions under Rule 375(a). 284 Ill. App. 3d at 922-23.

\* \* \*

For the reasons stated, the judgment of the appellate court is affirmed in part and reversed in part and the cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Appellate court judgment affirmed in part
and reversed in part;
circuit court judgment affirmed in part
and reversed in part;
cause remanded.*

JUSTICES BILANDIC and HEIPLE took no part in the consideration or decision of this case.