In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1600

GRINNELL MUTUAL REINSURANCE CO.,

*Plaintiff-Appellant,*

*v.*

NICOLE A. HAIGHT,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 10 CV 50042–**Frederick J. Kapala**, *Judge.*

ARGUED SEPTEMBER 30, 2011—DECIDED SEPTEMBER 26, 2012

Before EASTERBROOK, *Chief Judge,* and POSNER
and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Shawn Haight purchased an insurance policy that included underinsured motorist coverage for the named insured (him) and any family members. After his teenage daughter Nicole was injured while riding in a car driven by an acquaintance whose insurance did not fully compensate her, she made an

underinsured motorist claim on her father's policy. The insurance company maintains that Nicole is not entitled to coverage because she was not riding in a vehicle listed on her father's policy when she was hurt. But we read the policy to provide underinsured motorist coverage to the named insured and his family members that does require the named insured or his family members to be occupying a vehicle listed on the policy during the accident. We therefore affirm the district court's entry of summary judgment in favor of Nicole.

## I. BACKGROUND

Nicole Haight was hurt in a single-car accident while a passenger in a car driven by Brian Day. Her medical bills exceeded the $50,000 in bodily injury coverage that Day had through his carrier, Country Insurance. She therefore made a claim seeking underinsured motorist ("UIM") coverage on a policy Grinnell Mutual Reinsurance Co. had issued to her father. According to its website, Grinnell provides insurance in twelve states throughout the Midwest.

The policy Grinnell issued to Shawn Haight (sometimes referred to in the documents as "Shawn Haight d/b/a/ SMH Rebuilding") has a "Business Auto Coverage Form" and various endorsements. Grinnell used forms and endorsements created by the Insurance Services Office, Inc., a national clearinghouse. The endorsement at issue here, the Illinois Underinsured Motorists Coverage Endorsement, provides $300,000 in coverage for all amounts the "insured" is entitled to recover as

compensatory damages from the owner or driver of an underinsured vehicle.

Day is not related to the Haights, nor does he work for Shawn Haight, and Day's car was not one of the two vehicles listed on Shawn Haight's policy. Maintaining that Nicole was not entitled to UIM coverage under the policy issued to her father because she was not riding in a "covered auto" during the accident, Grinnell filed this action in the United States District Court for the Northern District of Illinois seeking a declaratory judgment to that effect. The parties each moved for summary judgment, and the district court granted Nicole's motion. Grinnell appeals.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

Our first task, as it is in every case, is to determine whether we have subject matter jurisdiction. The complaint asserts that the federal court has jurisdiction based on 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000. The jurisdictional statements in the parties' appellate briefs assert that we have jurisdiction but do not give any information beyond that in the complaint.

Nicole's medical damages at the time the suit was filed were approximately $60,000. Day's policy covered $50,000, so we wondered whether we had jurisdiction and inquired at oral argument. Grinnell took us up on our

suggestion to seek leave after argument to amend its jurisdictional allegation, and it now seeks to supplement with additional facts. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-32 (1989).

Grinnell would now like to add more detail about the accident and Nicole's injuries. The additional allegations include that in the accident, Nicole was ejected from the vehicle in which she was riding and suffered multiple pelvic fractures, a fractured lower vertebra, minor head injuries, and contusions. Her recovery included two months of bed rest and time in a wheelchair. She claims continued pelvic and low back pain, a reduced ability to walk and sit for extended periods, and possible complications during pregnancy. Grinnell also seeks to add to its jurisdictional allegation that it is exposed to $250,000 in liability under the policy at issue.

As we have explained, the standard for determining the amount in controversy requirement "was established by the Supreme Court in *St. Paul Mercury:* unless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *Back Doctors Ltd. v. Metro. Prop. and Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)). The demonstration "concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." *Id.* at 829-30 (quoting *Brill v. Country-*

*wide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)). Also relevant in this regard, in addition to the other information about Nicole's claimed injuries and their long-term effects, is that Grinnell has now informed us that Nicole's settlement demand was $250,000. Although settlement negotiations are not admissible at trial pursuant to Federal Rule of Evidence 408 to prove liability for or invalidity of the claim or its amount, they can be considered "to show the stakes" when determining whether the amount in controversy is met. *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006). The additional information we have received assures us that Nicole is seeking damages in excess of the jurisdictional threshold. *Cf. Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011) (finding federal jurisdiction based on litany of injuries plaintiff claimed to have sustained). We grant Grinnell's request to amend its jurisdictional allegation, and, satisfied that jurisdiction exists, we proceed to the merits.

### B. Whether Nicole Haight Receives Underinsured Motorist Coverage

We review de novo the district court's grant of summary judgment as well as its construction of the insurance policy. *See Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324 (7th Cir. 2010). The parties agree that Illinois law governs the interpretation of the policy. In construing the policy, our primary objective is to ascertain and give effect to the parties' intentions as expressed by the words of the policy. *Rich v. Principal Life Ins. Co.*, 875 N.E.2d

1082, 1090 (Ill. 2007). As with any contract, we construe an insurance policy according to the plain and ordinary meaning of its unambiguous terms. *Auto-Owners Ins. Co.*, 614 F.3d at 324 (citing *Nicor, Inc. v. Associated Elec. & Gas*, 860 N.E.2d 280, 286 (Ill. 2006)). Where a policy provision is ambiguous, Illinois courts liberally construe it in favor of coverage. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010).

Grinnell maintains that Nicole Haight is not entitled to UIM coverage under the policy because the car in which she was riding when injured was not a "covered auto." Nicole, on the other hand, maintains that she is an "insured" under the UIM policy as Shawn Haight's family member. We note at the outset that this is not a case about a claim on a liability insurance policy. Illinois imposes a mandatory liability insurance requirement on all motor vehicles operating on its highways, and the liability policy must cover any person using the vehicle. *See* 625 ILCS 5/7-601(a); 625 ILCS 5/7-317(b)(2); *Schultz v. Ill. Farmers Ins. Co.*, 930 N.E.2d 943, 950 (Ill. 2010). In contrast to liability insurance's focus on the vehicle, uninsured and underinsured motorist coverage can protect the named insured and family members "when they are operating or are passengers in a motor vehicle, as well as when they are engaged in any other activity such as walking, riding a bicycle, driving a hay wagon, or even sitting on a front porch." *See* 3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 4.2 (3rd ed. 2005); *see also id.* § 33.2; *Doyle v. State Farm Mut. Auto. Ins. Co.*, 775 N.E.2d 180, 181-82 (Ill. App. Ct. 2002) (detailing policy that provided for unin-

sured motorist coverage if insured sustained bodily injury while walking and was struck by motor vehicle).

With that background in mind, we turn to the policy at issue here. The policy consists of a Business Auto Coverage Form and several endorsements, with the "Illinois Underinsured Motorists Coverage" endorsement the one in question. This document begins by stating in all capital letters: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Underneath the "ILLINOIS UNDERINSURED MOTORISTS COVERAGE" heading are the words:

> For a covered "auto" licensed or principally garaged in, or "garaged operations" conducted in Illinois, this endorsement modifies insurance provided under the following:
>
> BUSINESS AUTO COVERAGE FORM
>
> GARAGE COVERAGE FORM
>
> MOTOR CARRIER COVERAGE FORM
>
> TRUCKERS COVERAGE FORM

Next, underneath boxes containing the effective date, named insured, and $300,000 insurance limit, the endorsement states:

> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
>
> **A. Coverage**
>
>   1. We will pay all sums the "insured" is legally entitled to recover as compensatory

> damages from the owner or driver of an "underinsured motor vehicle."

. . .

**B.  Who Is an Insured**

If the Named Insured is designated in the Declarations as:

1.  An individual then the following are "insureds":

    a.  The Named Insured and any "family members".

    b.  Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". . .

    c.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

Section B.2 provides that if the named insured is "a partnership, limited liability company, corporation, or any other form of organization," then "insureds" include:

    a.  Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered auto must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    b.  Anyone for damages he or she is entitled to recover because of "bodily

injury" sustained by another "insured."

As an initial, and notable, matter, the "Named Insured" in this case is an individual. Grinnell does not argue otherwise. The UIM endorsement contains a "Named Insured" box, and "Shawn Haight" is filled in. He is also the "Named Insured" on the Business Auto Coverage Form Declarations. Some of the other documents refer to "Shawn Haight d/b/a SMH Rebuilding," but Grinnell does not contend that those references mean that the "Named Insured" in the UIM endorsement is something other than an individual. Indeed, in Illinois, the "'d/b/a' designation does not create an entity distinct from the person operating the business." *See Pekin Ins. Co. v. Estate of Goben*, 707 N.E.2d 1259, 1264 (Ill. App. Ct. 1999); *see also Georgantas v. Country Mut. Ins. Co.,* 570 N.E.2d 870, 873 (Ill. App. Ct. 1991); *Patrevito v. Country Mut. Ins. Co.*, 455 N.E.2d 289, 291 (Ill. App. Ct. 1983).

There is also no dispute that Nicole is a "family member" of Shawn Haight under the terms of the endorsement. The UIM endorsement defines "family member" to include a person related to the named insured by blood who resides in the named insured's household. Nicole was a teenager at the time of the accident, with parents who shared joint custody, and the parties do not dispute that she resided with her father for purposes of the policy. *Cf. Casolari v. Pipkins*, 624 N.E.2d 429, 432 (Ill. App. Ct. 1993) (finding under facts before it that minor whose parents had joint custody resided with father for insurance policy's purposes although primary residence was with mother).

Because section B.1.a of the UIM endorsement includes a "family member" as an "insured" when the named insured is an individual, Nicole maintains that is the end of the story and that she is entitled to UIM coverage. Grinnell, however, contends that a read of the policy as a whole demonstrates that Nicole needed to occupy a "covered auto" to be afforded UIM coverage. Nicole was not in a covered auto during the accident, so Grinnell says she does not receive UIM coverage under the policy. We conclude that the policy affords UIM coverage to the individual named insured and his family members that does not require occupation of a covered auto. Nicole is therefore entitled to coverage.

The Business Auto Coverage Form states that the "insured" means the person qualifying as an insured in the "Who Is an Insured" provision of the applicable coverage. The applicable coverage here, the UIM Endorsement, states in its "Who Is an Insured" section that when as here the named insured is an individual, then pursuant to B.1.a the named insured and any family members are "insureds." So Nicole is entitled to coverage by the terms of B.1.a., as there is no qualification in B.1.a that the named insured or family member must have been occupying a covered auto.

The lack of such a qualification in B.1.a stands in contrast to other provisions in the UIM Endorsement's "Who Is an Insured" section, including the provision that immediately follows it. Section B.1.b includes as "insureds" when the named insured is an individual "[a]nyone else 'occupying' a covered 'auto' or a

temporary substitute for a covered 'auto.'" The qualification of "occupying a covered auto" could have just as easily been added to B.1.a, but it was not. Moreover, the use of the word "else" in B.1.b suggests an intent to distinguish that category of insured persons from those in the previous category, B.1.a.

Section B.1.a also becomes irrelevant if it only applies to persons "occupying a covered auto." *Cf. Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 214 (Ill. 2004) (noting Illinois courts generally avoid interpretations that render contract terms surplusage) (citing *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358 (Ill. 1998)). If Grinnell's reading is right, only a single category defining an insured when the named insured is an individual is necessary–"anyone occupying a covered auto"—and there is no need for B.1.a. Yet that is not what the policy does in section B.1; instead, there are distinct provisions in B.1.a and B.1.b. In contrast, the policy does in fact specify a single category of persons "occupying a covered auto" in B.2 of the UIM endorsement, which applies to business entities. Section B.2.a defines "insureds" when the named insured is a business entity to include "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" There is no separate provision for the named insured or anyone else. Rather, for business entities, there is a single category for persons occupying a covered auto.

This distinction between named insureds who are individuals and those that are business entities is meaningful in Illinois and makes sense as "corporations cannot

have family members." *Econ. Preferred Ins. Co. v. Jersey Cnty. Const., Inc.*, 615 N.E.2d 1290, 1294 (Ill. App. Ct. 1993) (rejecting uninsured motorist claim by daughter of president of corporation where policy covered "You or any family member," policy defined "you" and "your" as "the person or organization shown as the named insured," and the named insured was a corporation); *see also Stark v. Ill. Emcasco Ins. Co.*, 869 N.E.2d 957, 963 (Ill. App. Ct. 2007) (rejecting UIM claim by corporation's sole officer, director, and shareholder where policy issued to corporation and plaintiff not riding in covered automobile during accident). Here, though, the named insured is an individual, and so the "Named Insured and any 'family members'" category of insureds in B.1.a has meaning.

So the text of the "Who Is an Insured" section of the UIM Endorsement contains no prerequisite of covered auto occupancy when the named insured is an individual. Grinnell, however, urges that the words "For a covered 'auto'" at the very top of the UIM Endorsement mean that a covered auto must be occupied to qualify for coverage under section B.1.a. It argues that with those words at the top of the endorsement, there was no need to add them again in section B.1.a. We, however, think the better reading is that the sentence simply designates which coverages the UIM Endorsement modifies, and, therefore, that the phrase only

applies to the first sentence on the page.[1] It is strained both as a matter of grammar and of logic to read the prepositional phrase "For a covered auto" to modify not only words within the same sentence, but also everything in section B.1.a—a section visually and structurally separated from the phrase. (In between there are two tables containing information about the coverage as well as a three-paragraph section.) And if Grinnell's reading were correct, section B.1.a would become "for a covered auto, the named insured and any family members." But then B.1.b would read, "for a covered auto, anyone else occupying a covered auto . . . ." (with a similar reading in section B.2), an odd result. And the distinctions between B.1.a, B.1.b, and B.2 would be rendered meaningless. That is not the preferred way to interpret contract terms. *Cf. Cent. Ill. Light Co.*, 821 N.E.2d at 214.

Next, the fact that the Business Auto Coverage Form only deems "insureds" for *liability* coverage to be persons who occupy covered autos does not change our analysis. The "Who Is an Insured" provision in the

---

[1] The sentence in question is:

> For a covered "auto" licensed or principally garaged in, or "garaged operations" conducted in Illinois, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM

> GARAGE COVERAGE FORM

> MOTOR CARRIER COVERAGE FORM

> TRUCKERS COVERAGE FORM

liability coverage form specifies that persons must be in a covered auto to be insured. But that is a liability provision, not a UIM provision, and the form also specifies that "insured" means the person or organization who qualifies as an insured in the "Who Is an Insured" provision of the applicable insurance. The UIM endorsement has its own provision defining who the insureds are for its purposes. Grinnell also emphasizes that the declarations page of the Business Auto Coverage Form shows "7" next to the selected coverages, including UIM coverage, which signifyies that the coverage only applies to "Specifically Described 'Autos.'" Our reading does not render the "7" designation irrelevant. Which autos are covered can be relevant in determining UIM coverage, including when sections B.1.b and B.2 apply, so the identity of covered autos is necessary and relevant there. But when there is no reference to a "covered auto," such as in B.1.a, reference to the list of covered autos is not necessary.

Grinnell also argues that the language in B.1.b of the UIM Endorsement is present simply to comply with the Illinois Motor Vehicle Code. Under Illinois law, a permissive user of a vehicle must be afforded liability coverage under the owner's policy: liability insurance policies "[s]hall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express permission of the insured." 625 ILCS 5/7-317(b)(2) (West 2008); *see State Farm Mut. Auto. Ins. Co. v. Smith*, 757 N.E.2d 881, 884 (Ill. 2001). As Grinnell points out, other Code provisions require the inclusion of uninsured and underinsured motorist coverage in all liability policies,

in minimum amounts set by statute, "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." *See* 215 ILCS 5/143a-2(1), (4). Where the insured purchases coverage exceeding the statutory minimum, liability policies must offer uninsured coverage up to the liability coverage limit and underinsured motorist coverage up to the uninsured limit. *Id.*

Grinnell argues that section B.1.b merely implements these statutory requirements. The Grinnell UIM Endorsement, however, does not mention mandatory liability insurance, liability coverage for permissive drivers of the insured's vehicle, or the statutorily required amounts of coverage. Moreover, the Illinois statute defines an "underinsured motor vehicle" to mean a vehicle whose liability limits are less than the UIM limits on the policy in question, and "whose ownership, maintenance or use has resulted in bodily injury or death of the insured, *as defined in the policy*," *id.* § 143a-2(4) (emphasis added), which shows that reference to the policy is necessary. The Grinnell policy complies with the requirements of section 143a-2, but sections B.1.a and B.1.b of the UIM endorsement do not embody those requirements.

In short, the UIM Endorsement contains its own definition of who is insured, and for individuals, that includes the named insured and family members, with no requirement that they occupy a covered auto. Our decision is consistent with decisions in three states that have interpreted the same policy language. *See Reisig v. Allstate Ins. Co.*, 645 N.W.2d 544 (Neb. 2002); *Stoddard*

*v. Citizens Ins. Co. of Am.*, 643 N.W.2d 265 (Mich. Ct. App. 2002); *Bushey v. N. Assurance Co. of Am.*, 766 A.2d 598 (Md. 2001). One state supreme court, however, over a dissent, construed the same policy language to mean that a family member must be in a "covered auto" to receive UIM coverage. *Lisowski v. Hastings Mut. Ins. Co.*, 759 N.W.2d 754 (Wis. 2009). We note that the *Lisowski* plaintiff argued that the words "For a covered auto" at the top of the UIM Endorsement were not part of the policy and were instead merely introductory language that should not be given effect, and that Nicole has not made the same argument here. We agree that the language should be given effect, but we think the proper effect is that it is part of a sentence specifying the types of coverage that the UIM Endorsement modifies.

Our decision is also consistent with common understanding of underinsured motorist insurance. Uninsured and underinsured motorist policy forms often specify three classes of insureds, as the form does here. *See* 3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 33.1 (3rd ed. 2005). Policy terms commonly specify that class 1 insureds include "both the persons identified as 'named insureds' on the declaration sheet and family members (including a named insured's spouse) who are residents of a named insured's household." *Id.* § 33.2. (As here, the second class consists of any other person while occupying a "covered" or "insured" vehicle, and the third for damages he is entitled to recover because of bodily injury sustained by a person in class 1 or 2. *Id.*) As one treatise explains, "Most significantly, clause/class (1)

insureds do not have to be an occupant of an insured vehicle when an injury occurs in order to be covered." *Id.* § 33.2. This is the common understanding. *See also id.* § 33.5; 16 Williston on Contracts § 49:35 (4th ed. 2009) ("Uninsured and underinsured insurance provide 'first-party' coverage that is personal and portable, following the insured, rather than the vehicle."); *cf. Stearns v. Millers Mut. Ins. Ass'n of Ill.*, 663 N.E.2d 517, 521 (Ill. App. Ct. 1996), *overruled on other grounds by McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125 (Ill. 1999); *Haberman v. Hartford Ins. Group*, 443 F.3d 1257, 1268-69 (10th Cir. 2006) (applying Oklahoma law and concluding that named insured was covered while riding as passenger in vehicle not listed on her policy where policy did not limit UIM coverage to riding in covered vehicles).

The rationale behind declining to require occupancy in a covered auto at the time of an accident is to protect the insured at all times against the risk of damages at the hands of underinsured motorists. *See Howell v Balboa Ins. Co.*, 564 So.2d 298 (La. 1990); *Nationwide Mut. Ins. Co. v. Howard*, 339 S.E.2d 501, 504 (S.C. 1985) ("Uninsured motorist coverage is not to provide coverage for the uninsured vehicle but to afford additional protection to the insured.") (citation omitted); *see also Janes v. W. States Ins. Co.*, 783 N.E.2d 37, 47 (Ill. App. Ct. 2001) ("The underinsured-motorist coverage a policyholder purchases should not be reduced simply because he is an occupant of someone else's vehicle."). As for the extension from not only named insureds to relatives, "UM/UIM coverage for relatives is often mandated by statute based upon the rationale that an insurer cannot validly

exclude from coverage a class of individuals who are required to be insured under the liability portion of the policy." 9 Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* § 123:8 (3rd ed. 2011); *see, e.g., Mundey v. Erie Ins. Group*, 914 A.2d 1167, 1177 (Md. 2007) ("We hold, therefore, that [Md. Code Ann., Ins.] § 19-509 requires automobile liability insurance contracts to provide uninsured motorist coverage, at a minimum, to the named insured as well as any family members who reside with the named insured."); *Vaiarella v. Hanover Ins. Co.*, 567 N.E.2d 916, 918 (Mass. 1991) ("While it has been remarked that [underinsured motorist] coverage is 'limited personal accident insurance chiefly for the benefit of the named insured,'. . , it is clear that the Legislature intended to include members of the insured party's household under this coverage when it passed G.L. c. 175, § 113L.") (citations omitted); 16 Richard A. Lord, *Williston on Contracts* § 49:35 (4th ed. 2009).

In *Prudential Property and Casualty Insurance Co. v. Colbert*, 813 A.2d 747 (Pa. 2002), for example, the Supreme Court of Pennsylvania considered a son's claim for UIM benefits under his parents' policy after he was injured while driving a car not listed on his parents' policy. The policy only provided for UIM benefits for relatives if driving a car covered by the policy or a substitute car, and the son was driving neither. Nonetheless, the court held that Pennsylvania's Motor Vehicle Financial Responsibility Law trumped. The statute defined an "insured" to include a minor residing in the household of the named insured, 75 Pa. Cons. Stat. § 1702, and the court ruled that the insurance policy impermissibly

narrowed the definition of "insured." *Id.* at 751. (The court ultimately upheld the denial of coverage under an "other household vehicle" exclusion not at issue here. *See id.* at 755.) According to its website, Grinnell operates in Pennsylvania. And according to its counsel, its forms were created by a national clearinghouse. It would make sense that the forms were created with the breadth of national knowledge in mind. In any event, we are comfortable concluding that under Illinois law, Nicole Haight is entitled to UIM coverage under the policy Grinnell issued to her father even though she was not riding in a covered vehicle at the time of the accident.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.