Allen, J.
 

 This is an error proceeding prosecuted to a judgment of the Court of Appeals of Franklin county, which granted a mandatory injunction ordering the defendant, Preston E. Thomas, as warden of the Ohio penitentiary, to permit one Everett L. Mills, attorney, to privately consult and privately converse with one Patrick Eugene McDermott, who was then and is now confined in the Ohio penitentiary under a conviction and sentence of murder in the first degree from the court of common pleas of Stark county, Ohio. In January and in February, 1927, Mills, the attorney for McDermott, came to the penitentiary at Columbus, Ohio, and demanded that the warden permit, him to hold a private interview with Mc-Dermott with regard to certain error proceedings then and now pending for review of the murder trial in which McDermott was convicted. The warden refused to grant this interview and thereupon Mills filed a petition in the court of common pleas of Franklin county, praying for a mandatory injunction commanding Warden Thomas to permit him to hold the interview. The court of common pleas refused to grant the order prayed for and dismissed the plaintiff’s petition.
 

 Mills then appealed the action to the Court of Appeals of Franklin county, and later filed an amended petition setting up facts which had occurred subsequent to his first application to interview his client. The warden filed an answer which
 
 *116
 
 in general admitted the allegations of the petition and stated that he was willing to permit Mills to interview McDermott in his presence, or in the presence of an officer, but not in private. The Court of Appeals held two hearings on the case. Upon the first hearing it denied the peremptory writ, but after the second hearing, which took place subsequently to the filing of the amended petition, it entered an order directing the warden to allow the plaintiff to have a private interview with his client. At the same time the Court of Appeals made the following findings of fact and conclusions of law:
 

 “The court further finds that the plaintiff, Everett L. Mills, is an attorney at law, entitled to practice in all of the courts of record of this state, and is now the attorney of record of one Patrick Eugene McDermott, who is now incarcerated in the Ohio penitentiary, at Columbus, Ohio, in the custody of the defendant, Preston E. Thomas, as warden of such penitentiary.
 

 “That the said Patrick Eugene McDermott was heretofore convicted of the offense of first degree murder in the court of common pleas of Stark county, Ohio, and there is now pending in the court of appeals of Stark county, Ohio, error proceedings entitled: Patrick Eugene McDermott, plaintiff in error, v. State of Ohio, defendant in error, whereby the said Patrick Eugene McDermott is seeking to set aside the said conviction and to regain his liberty and his release from said Ohio penitentiary.
 

 “The court further finds that the said Patrick Eugene McDermott has been confined in said peni
 
 *117
 
 tentiary for a period of oyer two months, and that during that time the said Everett L. Mills, as such attorney, has not been permitted to see or confer with his said client, on account of the refusal of said defendant as such warden to permit the same.
 

 “The court further finds that for said defendant as such warden to further deny to the plaintiff the right to privately confer and consult with the said Patrick Eugene McDermott with reference to the prosecution of said error proceedings would be unreasonable and would constitute an abuse of the official discretion of said defendant as such warden, which this court has heretofore held to be vested in him as such warden.
 

 “It is further ordered and decreed that a mandatory injunction herein issue, requiring that the defendant, Preston E. Thomas, as warden of the Ohio penitentiary, permit the said Everett L. Mills to privately see, privately consult, and privately converse with the said Patrick Eugene McDermott, and restraining him as such warden from interfering in any manner with the right of said attorney to confer with said client, as heretofore found by this court.”
 

 A motion to certify the record having been refused in this case, the Attorney General of the state of Ohio filed a petition in error as of right, upon the ground that a constitutional question was involved.
 

 The constitutional provisions applicable are found in Article I, Sections 10 and 16, of the Ohio Constitution, which read as follows:
 

 “Section 10. * * * In any trial, in any court, the party accused shall be allowed to appear and
 
 *118
 
 defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witness face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *.”
 

 “Section 16. All courts shall be open and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due eourse of law, and shall have justice administered without denial or delay.”
 

 Is the constitutional right of McDermott infringed under Article I, Section 10, by the refusal of the warden to permit him to see his attorney?
 

 Counsel for the warden contend that no such constitutional right is infringed in this instance, upon the ground that it is only the attorney who is seeking a conference with his client, and that tbe client does not desire a conference with his attorney. However, the record discloses that the warden states that McDermott, the prisoner, “did not want to talk because his attorney, Mills, was to see him today (March 16th).” A fair inference from this statement is that the client, at least upon that particular day, was not only willing to see, but desirous of seeing his lawyer. In our judgment, however, it is immaterial whether the client seeks his attorney or the attorney seeks the client. If the relationship of client and attorney actually exists, it is the duty of diligent counsel to seek a conference in order to consult as to steps to be taken in the proceedings. Surely an attorney is
 
 *119
 
 unfaithful to his trust if he does not, when in his judgment the occasion requires it, endeavor to confer with his client for the purpose of planning his case. Surely, also, the right to consult with one’s attorney includes the right to have a conference, which is sought, not by the client, but by the attorney himself. Hence this objection on behalf of the warden is overruled.
 

 It may be conceded that consultation with counsel is a necessary part of every defense, and such consultation rightly should take place not merely during the actual stages of the trial, but at every point in the proceedings. Moreover, such consultations should in all fairness be held in private. But does the specific provision of Article I, Section 10, guarantee the right privately to consult with an attorney except before and during the actual trial of the case in the trial court?
 

 In its strict definition, the word “trial” in criminal procedure means the proceedings in open court after the pleadings are finished and the prosecution is otherwise ready, down to and including the rendition of the' verdict; and the term “trial” does not extend to such preliminary steps as the arraignment and giving of the pleas, nor does it comprehend a hearing in error.
 

 In
 
 Thompson
 
 v. Denton, 95 Ohio St., 333, 116 N. E., 452,. it was stated that the term “trial” in Article IV, Section 6 of the Ohio Constitution, is broad enough to include any judgment, finding, order, or decree, not interlocutory in its nature, affecting the substantial rights of a party to a chancery suit, and that holding was essential to the decision in the syllabus. The
 
 Benton case
 
 did not
 
 *120
 
 construe the word “trial” as used in Article I, Section 10, however, and the privilege extended under that section has never been held in this state to permit a sentenced convict to attend the hearing of error proceedings. We think that it was not intended that the word “trial” in that provision should be so all-inclusive. Certainly the privilege meant to be given to an accused person under this section of the Constitution was that of defending himself against the charges and testimony of witnesses as made in the trial court, and it was never contemplated that a convict should be dragged back and forth from the penitentiary to be present at mere arguments of law made by his counsel upon error proceedings. We therefore hold that no constitutional right was infringed under this section in refusing the interview.
 

 Was Article I, Section 16 of the Constitution of Ohio, violated by the warden’s refusal? That section provides that every person shall have justice administered without denial or delay. Surely the right to be represented by counsel in every stage of a criminal proceeding is a right inherent in justice itself, and any person who is denied the right is denied justice. The right must, of course, be exercised in accordance with the reasonable rules and regulations of the penitentiary. Application for the conference must be made at reasonable hours and at reasonable intervals, and the record shows that such was the case herein.
 

 In addition to the fact that the denial of the right privately to consult with the attorney is a refusal of a constitutional right under Article I, Section 16, we think that the holding of the Court of Appeals
 
 *121
 
 must be sustained upon tbe ground that the refusal of the warden is an abuse.of discretion. If it is just that a person should be represented by counsel, and have the right at every stage of the proceedings to confer with him, it is unjust and arbitrary to deny a person in custody the right privately to confer with counsel concerning his legal rights, when application is made for such conference in accordance with reasonable penitentiary regulations. The term “arbitrarily,” as defined in 4 Corpus Juris, 1475, means “Without fair, solid, and substantial cause and without reason given; without any reasonable cause; in an arbitrary manner.” As defined in the opinion of
 
 Central of Georgia Ry. Co.
 
 v.
 
 Mote,
 
 131 Ga., 166, 178, 62 S. E., 164, “the word ‘arbitrarily’ means in an arbitrary manner, and ‘arbitrary,’ as defined in the Standard Dictionary, means, ‘fixed or done capriciously or at pleasure; without adequate determining.principle; not founded in the nature of things; non-rational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic.’ ”
 

 That the warden’s position in relation to the right of the attorney to interview the client is on his part arbitrary, within the above definitions, is shown by the following testimony of the warden in answer to questions of a member of the Court of Appeals:
 

 “The Judge: You regard that as a private inter view between a lawyer and his client to have a warden or an officer of the penitentiary present?
 

 “The Witness: I would not say it was a private interview; but I would say it was an interview
 
 *122
 
 that would be right and just. I believe, as warden, that I should know what was going on.
 

 “The Judge: Is it customary or not for a man who consults his client to see him alone?
 

 “The Witness: Sometimes, and sometimes not.
 

 “The Judge: In other words, as I understand you would reserve—whether or not a lawyer could see his client at any time in your judgment you thought the lawyer should not see his client—you would reserve the right to say yes or no?
 

 “The Witness: I feel that that man has been convicted, he is a prisoner in the Ohio penitentiary, and as such he is absolutely in my charge, and I have the absolute right to reject or to allow visitation.
 

 “The Judge: Suppose a prisoner is there and has a case on error in the Court of Appeals or a case in the Supreme Court, and it is necessary or advisable in the judgment of counsel to converse with his client; am I to understand that you would reserve the privilege or right to say that he should or should not see him in private?
 

 “The Witness: Yes, in private; such visitation may be made and allowed by me in any manner that I prescribe. I allow some the screen, some the table, and others the open bars; and some I refuse or in the presence of somebody; just as I deem advisable.”
 

 Hence it is the view of the warden that he has an absolute right at will to reject or allow conferences of attorneys with clients who are confined in the penitentiary.
 

 It is contended by the Attorney G-eneral on be
 
 *123
 
 half of the warden that inasmuch as Sections 2155 and 1842 of the General Code place the Ohio penitentiary under the executive control and management of a chief officer, designated as the warden of the Ohio penitentiary, the warden has the administrative power to refuse to permit an attorney of a convict to privately see, privately consult, and privately converse with such convict. With this contention we cannot agree. Conceding the breadth of the warden’s administrative power, and conceding that he has certain discretion, he cannot, under our Constitutions and statutes, exercise that power arbitrarily and unjustly, and injunction will lie to prevent such an arbitrary exercise of power. If the statute gave the warden power to act arbitrarily, and at mere whim, it would be unconstitutional.
 
 State
 
 v.
 
 Yopp,
 
 97 N. C., 477, 2 S. E., 458, 2 Am. St. Rep., 305;
 
 Yick Wo
 
 v.
 
 Hopkins, Sheriff,
 
 118 U. S., 356, 6 S. Ct., 1064, 30 L. Ed., 220. The discretion of executive officers must be lawfully exercised in accordance with established principles of justice. It must not constitute a mere arbitrary choice. Discretion cannot be exercised 'arbitrarily.
 
 Noel
 
 v.
 
 People,
 
 187 Ill., 587, 58 N. E., 616, 52 L. R. A., 287, 79 Am. St. Rep., 238;
 
 Illinois State Board of Dental Examiners
 
 v.
 
 People ex rel. Cooper,
 
 123 Ill., 227, 13 N. E., 201;
 
 Village of Glencoe
 
 v.
 
 People ex rel. Owen,
 
 78 Ill., 382;
 
 Eureka City
 
 v.
 
 Wilson,
 
 15 Utah, 67, 48 P., 150, 62 Am. St. Rep., 904;
 
 Taylor
 
 v.
 
 Robertson,
 
 16 Utah, 330, 52 P., 1.
 

 The statute does not confer upon the warden the power to give or withhold consent to an interview between a prisoner and his attorney without reason and without responsibility. Such a power, in the
 
 *124
 
 words of the Supreme Court of the United States in
 
 Yick Wo v. Hopkins, Sheriff, supra,
 
 “is purely arbitrary, and acknowledges neither guidance nor restraint.” The warden must of course take steps to prevent jail breaking; but with his wide powers of search and control of prisoners he can protect the penitentiary without refusing private interviews to attorneys of convicts confined therein.
 

 The general proposition that sound judicial ethics require conferences between attorneys and clients is shown by the legislative enactment in our state, Section 12856-1, General Code, which makes it a misdemeanor for custodians of prisoners, in county jails, municipal jails, prisons or station houses, to prevent prisoners from consulting with attorneys and other persons. That a similar statute comprehends every possible situation in which an accused person, or persons under arrest or not under arrest, desires to consult with counsel or communicate with counsel or obtain advice or services of counsel in the protection of his rights, or even supposed legal rights, has been specifically held in
 
 Hamilton
 
 v.
 
 State,
 
 68 Tex. Cr. R., 419, 153 S. W., 331. And it was held in
 
 State ex rel. Tucker
 
 v.
 
 Davis,
 
 9 Okl. Cr., 94, 130 P., 962, 44 L. R. A., (N. S.), 1083:
 

 “Where a person is confined in jail pending a trial upon a criminal prosecution, he has the right to have an opportunity to consult freely with his counsel without having any person present to hear what passes between them, whose presence is objectionable to such defendant.
 

 “It is the duty of officers having custody of persons charged with the commission of crime to
 
 *125
 
 afford them a reasonable opportunity to privately consult their attorneys, and no officer has the right to be present and hear what is said during such consultation; but the officers must take such precautions as may be necessary, * * * to prevent the escape of such prisoners.”
 

 In the opinion, the court says:
 

 “It would be a cheap subterfuge of and shameless mockery upon justice for the state to put a man on trial in its courts, charged with an offense which involved his life, liberty, or character, and then place him in such a position, that he could not prepare to make his defense. It would be just as reasonable to place shackles upon a man’s limbs, and then tell him that it is his right and duty to-defend himself against an impending physical assault. If the right of defense exists, it includes and carries with it the right of such freedom of action as is essential and necessary to make such defense complete. In fact, there can be no such thing as a legal trial, unless both parties are allowed a reasonable opportunity to prepare to vindicate their rights. * * *
 

 “The right to be heard by counsel would, in the language of Saint Paul, 1 Cor. 13, 1, ‘become as sounding brass, or a tinkling cymbal,’ if it did not include the right to a full and confidential consultation with such counsel, with no other persons present to hear what was said. This is a material, substantial right, essential to justice.”
 

 The reason and spirit of this holding certainly applies to the right to consult with regard to error proceedings and with regard to legal rights generally, as well as with regard to the trial itself.
 

 
 *126
 
 Now, a convict incarcerated in the Ohio penitentiary is not civilly dead.
 
 Frazer
 
 v.
 
 Fulcher,
 
 17 Ohio, 260. He still has the rights which have not been taken from him expressly or by necessary implication of law.
 

 In view of the constitutional provision above quoted, Article I, Section 16, Ohio Constitution, that justice must be administered to every person without denial and without delay, we hold that a constitutional right was violated in this case. In view also of the fact that it is just and equitable that even convicts confined in jail shall have the right to interview their attorneys, we hold that the refusal of the warden in this instance' was an arbitrary abuse of power, and affirm the Court of Appeals in the issuance of the mandatory injunction.
 

 Judgment affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Jones and Matthias, JJ., concur.