[Cite as *Maher v. United Ohio Ins. Co.*, 2022-Ohio-1015.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

ANDREW MAHER,                           :
                                        :        Case No. 20CA11
    Plaintiff-Appellant,                :
                                        :
v.                                      :        DECISION AND JUDGMENT
                                        :        ENTRY
UNITED OHIO INSURANCE CO., et al., :
                                        :        **RELEASED: 03/21/2022**
    Defendants-Appellees.               :

APPEARANCES:

Douglas D. Brannon and Kevin A. Bowman, Brannon & Associates, Dayton, Ohio, for Appellant.

Matthew R. Planey, Crabbe, Brown & James, LLP, Columbus, Ohio, for Appellee.

Wilkin, J.

{¶1} Appellant, Andrew Maher, appeals the Highland County Court of Common Pleas judgment granting United Ohio Insurance Company's ("United Ohio") motion for summary judgment. Maher was a passenger in an Ecotec Rail Buggy/ATV, when the driver, Bryan Collins, lost control of the vehicle, slid into a ditch and hit a tree.[1] At the time of the accident, Maher had a commercial insurance auto policy with United Ohio. After United Ohio denied coverage for Maher's medical expenses maintaining the Buggy was not a covered auto under the policy, Maher filed a complaint claiming breach of contract and bad faith conduct by United Ohio. The trial court agreed with United Ohio that under the terms of the insurance policy, Maher's medical payment and uninsured/

---

[1] Bryan Collins is not a party to this appeal.

underinsured motorist ("UM/UIM") coverage provisions were limited to a covered auto. The only auto listed was a 2006 Nissan Titan. The trial court ruled in favor of United Ohio on all claims.

{¶2} Maher presents two assignments of error for our review. First, Maher asserts the trial court erred in failing to apply as written the language in the policy pertaining to the endorsements for the medical payment and UM/UIM provisions. According to Maher, that language expanded coverage beyond "covered auto" and allows for coverage when Maher is occupying "any auto." We overrule Maher's arguments as the policy language is clear with regard to the intent of the parties to provide coverage solely for the 2006 Nissan Titan. The endorsements did not modify Maher's selection of coverage in the business auto form. Maher paid a premium amount reflective of coverage being limited to the 2006 Nissan Titan. The medical payment endorsement definition of insured applies when Maher is occupying a covered auto and is struck by "any auto." For the UM/UIM endorsement, it expressly states that it applies to "covered auto."

{¶3} In the second assignment of error, Maher contends the trial court erred in granting United Ohio's motion for summary judgment on the bad faith claim without first bifurcating the claim and before providing him with the opportunity to view his claims file. We reject both arguments. The trial court did not abuse its discretion for failing to bifurcate the bad faith claim. Moreover, Maher failed to request review of his claims file, and he failed to demonstrate the trial court abused its discretion by not staying discovery. United Ohio did not act arbitrarily or capriciously when investigating Maher's claim and ultimately denying

it.  We thus affirm the trial court's decision granting United Ohio's motion for summary judgment.

## FACTS AND PROCEDURAL BACKGROUND

{¶4} On January 12, 2019, at approximately 5:11 p.m., Andrew Maher was riding as a passenger in an Ecotec Rail Buggy/ATV being driven by Defendant Bryan Collins traveling northbound on Strain Road in the city of Hillsboro.  Collins lost control of the Buggy and slid off the roadway into a ditch and hit a tree. Maher sustained severe and permanent injuries to his neck, back, aorta, ribs and lungs, as well as other parts of his body.  Maher proclaims his injuries were so severe that he incurred medical expenses in excess of $300,000 and will continue to incur additional expenses due to the accident.

{¶5} Maher's commercial auto policy with United Ohio was active at the time of the accident.  Under the policy, Maher paid a yearly premium of $779 based on the selected coverage.  For liability coverage, Maher selected coverage with numerical symbols 7, 8, and 9.  Maher, on the other hand, for auto medical payments, and coverages for UM/UIM solely selected numerical symbol 7. Based on those selections, the premium was $404 for liability coverage, $24, $10, and $66, respectively for the medical payment, UM and UIM coverages. Each numerical symbol represents a different level of coverage and as relevant here, symbols 1, 7, 8, and 9 are defined as follows:

| Symbol | | Description of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

{¶6} Maher reported a claim under his commercial business auto insurance policy with United Ohio on February 13, 2019, and requested payment for his medical bills.  David Weithman, claims adjuster with United Ohio, first confirmed that at the time of the accident, Maher's policy was active and that it provided coverage for medical payments and UM/UIM.  Weithman concluded that the coverage was limited to "Symbol 7," which meant it applied to only those "autos" described in Item Three of the Declaration for which a premium was shown.  Donna Elliott, Weithman's manager, also reviewed the policy and

deduced that "since the ATV was not specifically listed as a covered auto on the commercial policy, no coverage would be in effect." On July 12, 2019, United Ohio sent a letter to Maher advising him that "the Dune Buggy/ATV was not a covered auto under the commercial policy Mr. Maher had with United Ohio Insurance Company."

{¶7} Maher also attempted to get compensation for his medical expenses by having Collins submit a claim under Collins' auto and homeowners insurance policies with Allstate. Allstate on January 9, 2020, denied coverage finding:

> The recreational vehicle that Mr. Collins was driving is not an "auto" and therefore not an "insured auto" under the auto policy. In addition, the recreational vehicle is a motor vehicle, and therefore its use falls within the motor vehicle exclusion in Allstate's homeowners policy. Consequently, no coverage is available under either policy for Mr. Maher's claim.

{¶8} On January 27, 2020, Maher filed a complaint for personal injury against Bryan Collins and for breach of contract and bad faith against United Ohio.[2] Maher requested declaratory judgment that United Ohio breached its contract with Maher by refusing to negotiate in good faith and declining coverage under the medical payment and UM/UIM provisions.

{¶9} United Ohio filed an answer, a counterclaim, and requested declaratory judgment in its favor. Similar to its position when it initially denied coverage, United Ohio asserted the Buggy was not a covered auto under the policy. United Ohio maintained that Maher elected to pay a premium for "covered autos" only under the medical payment and UM/UIM provisions, and

---

[2] The complaint incorrectly named Ohio Mutual Insurance Group as the defendant insurance company. A stipulation was entered into in February 2020, correcting the insurance company's name to United Ohio Insurance Company.

since the Buggy was not listed as a covered auto, Maher was not entitled to coverage.

{¶10} Maher filed an answer to United Ohio's counterclaim denying several of the insurance company's allegations and argued that the policy speaks for itself. Approximately three months later, in June 2020, Maher filed a motion for summary judgment on his claims. Maher submitted there was no genuine issue of material fact and that he was entitled to coverage under the medical payment and UM/UIM endorsement provisions.

{¶11} The endorsement provision for medical payment identified an insured as "You while 'occupying' or, while a pedestrian, when struck by any 'auto'." Maher reads the endorsement provision to include payments for medical expenses arising from an accident while the insured (he) is occupying any auto. In his opinion, limiting the endorsement to pedestrians or passengers who are struck by their own covered auto would be absurd. Thus, United Ohio's refusal to provide Maher with the benefits per the policy was in bad faith.

{¶12} Maher similarly argued that the UM/UIM endorsement coverage language is controlling and as read means that coverage is available for any accident whether in a covered auto or not. The language Maher relies on is that United Ohio "Will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle' or 'underinsured motor vehicle' because of 'bodily injury' sustained by the 'insured' and caused by an 'accident'."

{¶13} United Ohio filed its own motion for summary judgment and opposed Maher's request for relief.  In the motion, United Ohio emphasized that the declaration provision is controlling.  Maher elected to solely have coverage under the medical payment and UM/UIM provisions for "covered autos" and the only auto listed is the 2006 Nissan Titan.  United Ohio also challenged Maher's bad faith claim in that the company was not unreasonable in reviewing and investigating his request for payment under the policy.

{¶14} Both Maher and United Ohio filed reply memoranda and reiterated their previous positions.  The trial court on September 30, 2020, granted United Ohio's motion for summary judgment and denied Maher's motion.  The trial court held:

> Plaintiff's argument is that the provisions of the endorsements referring to "autos" should be interpreted to include the dune buggy in which he was a passenger. This would ignore the other provisions of the policy which clearly delineate that the Plaintiff was only covering the 2006 Nissan Truck and no other vehicles. Had Plaintiff purchased and paid a premium for []Any "auto" under symbol 1, he would have been entitled to collect under those coverages. Unfortunately, he did not and is therefore not entitled to payments under any of them.
>
> * * *
>
> Therefore, it is hereby ordered and adjudged that the Plaintiff's motion for summary judgment be and is hereby denied, and that the Defendant's motion for summary judgment is hereby granted, and Defendant is granted judgment in its favor as to all of the claims against it set forth in the complaint. The claims against Defendant Bryan Collins are not affected by this judgment.

Pursuant to Civ. R. 54(B), the trial court certified its entry granting United Ohio's motion for summary judgment as a final appealable order and indicated there

was no just reason for delay.  The trial court's decision is now before us on appeal.

ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT UNITED OHIO INSURANCE COMPANY ON APPELLANT ANDREW MAHER'S CLAIMS FOR COVERAGE UNDER HIS POLICY.

II.    THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT UNITED OHIO INSURANCE COMPANY ON APPELLANT ANDREW MAHER'S CLAIM FOR BAD FAITH.

I.      FIRST ASSIGNMENT OF ERROR

**{¶15}** Under the first assignment of error, Maher challenges the trial court's finding that the medical payment and UM/UIM coverage provisions were limited to a covered auto.  Maher claims the trial court ignored the endorsement section of the policy; especially the writing at the top that "[t]his endorsement changes the policy."  Each endorsement has its own definition of an insured and coverage.  Based on the specific wording in each endorsement, Maher asserts the endorsements allow for coverage when he is occupying "any" auto.

**{¶16}** For medical payment coverage, Maher in support of his argument relies on the "insured" definitions of "You while 'occupying' or, while a pedestrian, when struck by any 'auto,' " and "anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'."  According to Maher, the use of covered auto when defining an insured who is "anyone else" supports his claim that the policy could have limited coverage for the individual insurer to covered auto but instead used the word "any auto."  Thus, the trial court's interpretation of

"any auto" to still be limited to the 2006 Nissan Titan was erroneous and ignored the express language in the endorsement.

{¶17} Similarly for the UM/UIM endorsement language, Maher bases his claim on the definition of insured that includes the "named insured," in this case him, while when defining an insured as "anyone else" there is the additional language that the person must be " 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'." Further, Maher recites the language in the coverage section of the endorsement: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle' or underinsured motor vehicle' because of 'bodily injury' sustained by the 'insured' and caused by an 'accident'." Maher interprets these provisions as allowing payment for his medical expenses for occupying the Buggy. He argues then that the trial court's contrary finding was erroneous.

{¶18} In summary, Maher submits that the business auto coverage form that defines the selection of what auto is covered does not control. Rather, the endorsements control since they include language that they "change[] the policy." Further, when applying the definitions of insured and coverage within the endorsements, the only conclusion is that "any" auto is covered.

{¶19} United Ohio responds by maintaining that the parties entered into a contract in which medical payment and UM/UIM coverages were purchased for a specific automobile. The intent of the parties is clear by the express language of the policy that is unambiguous. The wording and definition of what covered auto Maher selected in the business auto declaration and form control. And in this

case, the Buggy was not listed as a covered auto.  United Ohio is of the opinion

that the endorsements only apply to a "covered auto," which is in the introductory

language of the UM/UIM endorsement.

### A.  Summary judgment standard of review

{¶20} We review de novo a decision granting or denying a motion for

summary judgment based on an insurance contract.  *Ohio N. Univ. v. Charles*

*Constr. Servs., Inc.*, 155 Ohio St.3d 197, 2018-Ohio-4057, 120 N.E.3d 762, ¶ 11.

"De novo review means that this court uses the same standard that the trial court

should have used, and we examine all the Civ.R. 56 evidence, without deference

to the trial court, to determine whether, as a matter of law, no genuine issues

exist for trial."  *EMOI Servs., LLC v. Owners Ins. Co.,* 2d Dist. Montgomery No.

29128, 2021-Ohio-3942, ¶ 21, citing *Ward v. Bond*, 2d Dist. Champaign No.

2015-CA-2, 2015-Ohio-4297, ¶ 8.  In order to obtain summary judgment, the

movant must demonstrate

> (1) there is no genuine issue of material fact; (2) the moving party is
> entitled to judgment as a matter of law; and (3) it appears from the
> evidence that reasonable minds can come to but one conclusion
> when viewing evidence in favor of the nonmoving party, and that
> conclusion is adverse to the nonmoving party. *State ex rel. Cassels*
> *v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217,
> 219, 631 N.E.2d 150, 152.

*Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d

241.

{¶21} In the matter at bar, the parties both submit there is no genuine

issue of material fact.  Maher was a passenger in a Buggy that was involved in

an accident, and he sustained bodily injury.  Their arguments are based on the

language in the policy, including Maher's selection of coverage and the wording

in the medical payment and UM/UIM endorsement provisions.  Thus, the issue

comes down to whether the expressed language in the policy allows for coverage

beyond what is specifically listed as a "covered auto" in the declaration, or

whether the wording in the endorsement provisions expanded coverage to "any"

auto.

### B.  Insurance policies are contracts

{¶22} "An insurance policy is a contract; in interpreting contracts, courts

must give effect to the intent of the parties, and that intent is presumed to be

reflected in the plain and ordinary meaning of the contract language."  *Granger v.*

*Auto-Owners Ins.*, 144 Ohio St.3d 57, 2015-Ohio-3279, 40 N.E.3d 1110, ¶ 20,

citing *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-

4917, 875 N.E.2d 31, ¶ 7.  "And when a written contract's language is clear, we

look no further than the writing itself to determine the parties' intent."  *Charles*

*Constr. Servs., Inc.*, 155 Ohio St.3d 197, 2018-Ohio-4057, 120 N.E.3d 762, ¶ 11,

citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146

(1978), paragraph two of the syllabus.  But if a contract is "reasonably

susceptible of more than one interpretation," then the contract is ambiguous and

must be construed in favor of the insured.  *Wayne Mut. Ins. Co. v. McNabb*,

2016-Ohio-153, 45 N.E.3d 1081, ¶ 22 (4th Dist.).  "This rule, however, will not be

applied to create an unreasonable interpretation of the policy provisions."  *Id.*,

citing *Laboy v. Grange Indemn. Ins. Co.,* 144 Ohio St.3d 234, 2015-Ohio-3308,

41 N.E.3d 1224, ¶ 9.

C. Maher's insurance policy - medical payment

**{¶23}** Maher and United Ohio entered into a commercial auto insurance policy that was in effect at the time of the Buggy accident.  The policy document begins with a declaration summary page outlining in "Item One" the description of Maher's business, carpentry, and the type of business, individual.  Next, the policy includes in "Item Two" an auto declaration page in which it lists in a table the coverage type, the selected auto for that coverage, the limit of coverage, and finally the premium associated with the coverage selection.  For medical payment coverage, the table indicates Maher's selection of the numerical symbol "7" as the type of auto coverage.  The associated yearly premium is $24.  On the second page of the declaration is "Item Three" which includes the schedule of covered autos Maher owns and solely lists a 2006 Nissan Titan.

**{¶24}** The business auto coverage form begins by stating:

> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages.  The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

Numerical Symbol 7 is defined as "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)."

**{¶25}** The auto medical payment endorsement begins with "This endorsement changes the policy.  Please read it carefully."  Then it states "This endorsement modifies insurance provided under the following: business auto

coverage form."  But then clarifies "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement."  The endorsement continues with defining:

**A. Coverage**
We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident".  We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**
1. You while "occupying" or, while a pedestrian, when struck by any "auto".
2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

{¶26} Maher submits that the ultimate issue here is the definition of insured, and he asserts that he is an insured because he was occupying the Buggy, which meets the "any auto" requirement.  We disagree with Maher's interpretation that the medical payment endorsement changes the policy to now provide him coverage when he is occupying "any" auto.  We reject this argument because it is clear from the language of the policy and the amount of premium paid that the intent of the parties is to limit coverage to "covered auto" only. Expanding the policy to now provide coverage for Maher's medical expenses when he was occupying the Buggy beyond what Maher selected is not a reasonable interpretation.

{¶27} When comparing the definition of "insured" in the business coverage form and the definition in the endorsement, we find that the endorsement yields situations in which coverage applies as opposed to expanding coverage to all

autos.  The definition of insured in the business coverage form includes, in relevant part, the following: "**a.** You for any covered "auto".  **b.** Anyone else while using with your permission a covered "auto" you own, hire, or borrow[.]"  The definition in the business coverage form is all encompassing and has no restrictions when involving Maher in a covered auto.  Thus, Maher is covered if he is the driver or the occupier of the covered auto and is involved in a one-vehicle accident or multi-vehicle accident.  Similarly, for "anyone else," the business coverage form provides that the person is covered if driving the covered auto with Maher's permission.

{¶28} The endorsement with regard to "anyone else" expanded coverage by providing it for "anyone else" who is also occupying the covered auto.  On the other hand, for the insured it simply provided specific scenarios when coverage applies such as when Maher is occupying a covered vehicle "when struck by any auto" or is a pedestrian "when struck by any auto."  The phrase "when struck by any auto" is continuous and is not separated by any comas.  By using the ordinary rules of grammar and common usage, the word "any" modifies the auto striking Maher, not the vehicle Maher is occupying.  Therefore, the endorsement did not deviate from the coverage provided in the business auto form.  Per the business auto form language, Maher selected and is paying for coverage for the 2006 Nissan Titan as the only listed "covered auto."

{¶29} As a matter of law therefore, Maher's claim for coverage for medical payments under the terms of the policy cannot succeed.  There being no genuine issue of material fact and there being only one reasonable interpretation of the

policy, we affirm the trial court's decision granting United Ohio's motion for summary judgment and overrule Maher's argument.

### D. Maher's insurance policy - UM/UIM

**{¶30}** Maher selected numerical symbol 7 for both UM and UIM coverages, thus limiting coverage to covered auto, the 2006 Nissan Titan. The yearly premium for each is $10 and $66, respectively. The endorsement provision within the policy applies to both UM and UIM and begins by stating "This endorsement changes the policy. Please read it carefully." But then has the following: "For a covered 'auto' licensed or principally garaged in, or 'auto dealer operations' conducted in, Ohio, this endorsement modifies insurance provided under the following: * * * business auto coverage form." It clarifies "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement." It then defines:

**A. Coverage**
We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident".
The owner's or operator's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

**B. Who Is An Insured**
If the Named Insured is designated in the Declarations as:
1. An individual, then the following are "insureds":
   a. The Named Insured and any "family members".
   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its break-down, repair, servicing, "loss", or destructions. However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this Coverage Form.

{¶31} Contrary to Maher's claim, there is nothing in the UM/UIM endorsement that modifies coverage as outlined in the business auto form to now include any auto Maher occupies.  Maher is hung up on the wording in the endorsement of "all sums the 'insured' is legally entitled to[.]"  The same wording is used in the business auto form when defining coverage: "We will pay all sums an 'insured' legally must pay[.]"  Thus, the words "all sums" and "legally" are not unique to the endorsement provision.

{¶32} Similarly, there is nothing in the definition of insured as it relates to Maher that has been modified.  Under the business auto coverage form, insured is defined as "You for any covered 'auto'."  In the endorsement it defines insured as "[t]he named insured[,]" which in this case is Maher.  The endorsement does not include any language that would permit coverage for any auto.  It simply reiterates that Maher is the insured.  The written policy language is clear and we cannot look beyond the writing itself and add words to it.  *See Charles Constr. Servs., Inc.*, 155 Ohio St.3d 197, 2018-Ohio-4057, 120 N.E.3d 762, ¶ 11.

{¶33} Moreover, in the business auto form, one of the definitions for "insureds" is "Anyone else while using with your permission a covered 'auto' you own, hire, or borrow[.]"  The endorsement modified this definition of insured by now including "anyone else 'occupying' a covered 'auto'[.]"  This modification expanded coverage to now include anyone else occupying the covered auto and not simply a person driving it with permission.  No such modification was added to the definition of "The Named Insured."  We disagree with Maher's interpretation that simply because the insured definition of "anyone else" includes

the words "covered auto" is indicative of an inference to exclude it from the definition of "The Named Insured."  As the Supreme Court of Ohio recently reiterated:

> "a court cannot create ambiguity in a contract where there is none," *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008- Ohio-4838, 896 N.E.2d 666, ¶ 16. This includes creating an ambiguity by asking whether the parties could have included different or more express language in their agreement. *See* 11 Lord, *Williston on Contracts*, Section 30:4 (4th Ed.2021).

*AKC, Inc. v. United Specialty Ins. Co.*, _ Ohio St.3d _, 2021-Ohio-3540, _N.E. 3d _, ¶ 12.

{¶34} When reviewing Maher's insurance policy as written, we cannot conclude that the UM/UIM endorsement grants Maher the highest level of coverage while paying a premium for a lower coverage.  That, to us, is not a reasonable interpretation.  This conclusion is further supported by the introductory language in the endorsement "For a covered 'auto' " and in the matter at bar, the only covered auto based on Maher's selection is the 2006 Nissan Titan.  In addition, our interpretation of the policy is consistent with the lead and concurring opinions from the Second District Court of Appeals in *Kirkwood v. Motorist Mut. Ins. Co.*, 2d Dist. Miami No. 2011-CA-23, 2012-Ohio-23.

{¶35} In *Kirkwood*, the Second District affirmed the trial court's summary judgment in favor of the insurance company.  *Id.* at ¶ 1.  The lead opinion outlined the basic policy language in which Kirkwood selected UM/UIM coverage for "covered auto" only and the introductory language in the UM/UIM endorsement that it applies "For a covered 'auto' licensed."  *Id.* at ¶ 17.  Based

on the specific wording in the policy, the lead opinion held that the "modifications to coverage in this endorsement, upon which the Kirkwoods rely, only apply with respect to a covered auto." *Id*. at ¶ 17.  The concurring opinion agreed that the "result here is logical and should have been reasonably contemplated by the parties," because "the subject provisions are unambiguous as written[.]" *Id*. at ¶ 23, 31 (Cannon, J., concurring).  The dissenting opinion without providing an analysis concluded that the policy as written was ambiguous. *Id*. at ¶ 34 (Froelich, J., dissenting).

{¶36} Maher in addition to citing to some of the language in *Kirkwood*, relies on cases from other jurisdictions to support his argument that the policy is ambiguous and should be read in his favor as providing coverage when he occupies any auto.  We do not find any of the cases persuasive.

{¶37} In *Haberman v. The Hartford Insurance Group*, Dr. Joann Haberman was a passenger in an SUV driven by Tamara Mooney.  443 F.3d 1257, 1259 (10th Cir.2006).  Mooney lost control of the SUV and spun off the highway. *Id.*  Haberman sustained a fractured pelvis and multiple contusions. *Id.* Haberman is the sole shareholder of a professional corporation that had a commercial auto policy with Hartford. *Id.*  Haberman filed a claim for coverage under the policy's UM/UIM provision even though the SUV driven by Mooney was not a covered auto. *Id.* at 1260.  The Tenth Circuit in affirming the jury's verdict and finding Haberman's injuries were covered under the policy focused on the first sentence of the UM/UIM endorsement language that "[t]his endorsement changes the policy." *Id.* at 1267.  Based on that language, the

court held that the endorsement "modified the entire policy" and did not expressly limit coverage to only covered autos. *Id.* at 1268. The Tenth Circuit, however, made no reference as to whether or not the UM/UIM endorsement provision included language that it applies "For a covered 'auto' licensed" as we have here. We find this distinction critical because it corroborates the limited coverage in the business auto form to "covered auto" only.

{¶38} The Seventh Circuit in *Grinnell Mutual Reinsurance Co. v. Haight*, affirmed the summary judgment granted to Haight. 697 F.3d 582 (7th Cir.2012). Nicole Haight was a passenger in a car driven by Brian Day that was involved in a single-vehicle accident. *Id.* at 584. Haight's medical bills exceeded the amount covered under Day's policy so she made a UM/UIM claim under the commercial auto policy issued to her father with Grinnell. *Id.* The Seventh Circuit focused on the definition of insured under the UM/UIM endorsement to determine whether Nicole was covered under her father's policy. *Id.* at 586-587. The policy defined insured:

> If the Named Insured is designated in the Declarations as:
>     1. An individual then the following are "insureds":
>         a. The named Insured and any "family members".
>         b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto"[.]
> * * *
> [I]f the named insured is "a partnership, limited liability company, corporation, or any other form of organization," then "insureds" include:
>         a. Anyone "occupying a covered "auto" or a temporary substitute for a covered "auto". The covered auto must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>         b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

*Id.* at 586-587.

The court concluded that the lack of the qualifying term "covered auto" within the definition of family members as insured was indicative of Grinnell's intention to distinguish categories. *Id.* at 588. Therefore, the court held that the UM/UIM endorsement provides coverage for an insured and his family with "no requirement that they occupy a covered auto." *Id.* at 590. We do not find the Seventh Circuit's interpretation persuasive and disagree with such an interpretation that requires adding words to a policy. It is not this court's place to ask "whether the parties could have included different or more express language in their agreement." *AKC, Inc.*, __ Ohio St.3d __, 2021-Ohio-3540, __ N.E. 3d __, ¶ 12.

{¶39} The Maryland Court of Appeals in *Bushey v. Northern Assurance Co. of America*, also considered the UM/UIM endorsement language involved in a commercial auto insurance policy issued to the grandfather, Earl Weeks, of the vehicle driven by the victim and resulted in her death and that of the passenger. 362 Md. 626, 766 A.2d 598 (2000). In the declaration provision of the policy, Weeks elected coverage under UM/UIM for covered autos only. *Id.* at 633. The UM/UIM endorsement language included wording that it changes the policy and then provided several definitions for who is insured and liability coverage. *Id.* at 634-636. The court concluded the policy is ambiguous because the UM/UIM endorsement, although had "For covered 'auto' " in its heading, it also included modifying language of "occupying a covered auto" when defining insured, and when excluding coverage for bodily injury sustained by a family member in "any

vehicle owned by that family member that is not a covered 'auto.' " *Id.* The court held the clarifying language was unnecessary if the "For covered" wording was intended to be applied uniformly, making the policy ambiguous. *Id.*

{¶40} We do not find Maryland Court of Appeals' decision in *Bushey* persuasive in which it based its conclusion on the inference that inclusion of "covered auto" in certain parts of the endorsement equated to exclusion from other parts. We do not find that conclusion to be a reasonable interpretation.

{¶41} In *Reisig v. Allstate Ins. Co.*, Raymond Reisig was a passenger in a 1985 Chevrolet pickup truck when the driver lost control on an ice-covered portion of the highway and went off the roadway into a ditch. 264 Neb. 74, 75, 645 N.W.2d 544 (2002). Reisig submitted a claim for recovery of medical expenses under his commercial auto policy with Allstate. *Id.* at 75. Similar to the situation here and the previous case, Reisig selected coverage for "covered auto" under UM/UIM and the policy had UM/UIM endorsement provisions. *Id.* at 76-78. The endorsement provision included introductory language that "This endorsement changes the policy," and the phrase "For a covered 'auto.' " *Id.* at 81. The endorsement then defines insured as simply "you." The Nebraska Supreme Court held the endorsement was ambiguous because the word "you" is susceptible to different interpretations based on what modified word in the endorsement is used. *Id.* at 81-82. That is, if the court focuses on the language that the endorsement changes the policy, then the coverage is not limited to covered auto. *Id.* If the "For covered 'auto' " is used, as it is in the matter at hand, then coverage is limited to covered auto. *Id.*

**{¶42}** As we previously concluded, the only reasonable interpretation of Maher's insurance policy is that the premium paid is for the 2006 Nissan Titan. The UM/UIM endorsement did not modify the coverage when it expressly stated "For a covered 'auto' " and reiterated that Maher is the insured individual.  The language that "This endorsement changes the policy" does not automatically mean all previous definitions and provisions stated in the business auto coverage form should now be discounted, especially when the endorsement includes the caveat language: "the provisions of the Coverage Form apply unless modified by the endorsement."  The business auto coverage form specifically provides that UM/UIM coverage is limited to numerical symbol 7, a "covered auto," and the only listed auto is the 2006 Nissan Titan.

**{¶43}** Accordingly, we affirm the trial court's decision granting United Ohio's motion for summary judgment and overrule Maher's first assignment offer.

E.  Definition of "Auto"

**{¶44}** We begin by acknowledging that the trial court did not grant United Ohio's motion for summary judgment based on the policy's definition of auto; however, as we review the case de novo, we want to note that there is no evidence the Buggy meets the definition of auto.

**{¶45}** The business auto coverage form includes the following introductory language: "Other words and phrases that appear in quotation marks have special meaning."  As our previous references to several provisions within the insurance policy demonstrate, the word "auto" always appears in quotation marks.  This is because it has a special meaning:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

{¶46} United Ohio in its counterclaim for declaratory judgment averred that at "the time of said accident, Defendant Bryan K. Collins was operating a vehicle that was designed for use mainly off public roads." In addition, when Allstate denied coverage under Collins' auto policy it maintained that "The recreational vehicle that Mr. Collins was driving is not an 'auto' and therefore not an 'insured auto' under the auto policy." While there is no other argument at the lower court for this position, Maher stated in his appellate brief that the Buggy is a recreational vehicle. Pursuant to the clear definition of "auto" in the insurance policy, and the evidence that is before us, we conclude that the Buggy is not a vehicle designed for public roadway. This finding supports our holding affirming the trial court's summary judgment decision and overruling Maher's first assignment of error.

## II.     SECOND ASSIGNMENT OF ERROR

{¶47} In the second assignment of error, Maher makes several arguments in support of his claim that the trial court erred in granting United Ohio's motion for summary judgment on all claims, including bad faith. First, Maher contends the trial court erred by failing to bifurcate the case per United Ohio's request since R.C. 2315.21 mandates bifurcation once a motion is filed. Second, Maher asserts he was denied the opportunity to review his claims' file prior to the trial

court's decision. Thus, Maher avers it was premature for the trial court to have granted United Ohio's motion for summary judgment on the bad faith claim.

**{¶48}** In response, United Ohio maintains that it acted with reasonable justification in denying Maher's demand for coverage under the medical payment and UM/UIM provisions.

**{¶49}** We overrule Maher's assignment of error because the trial court did not abuse its discretion in denying the motion to bifurcate, Maher did not request to view his claims file, and the evidence before us demonstrates United Ohio did not act in an arbitrary or capricious manner.

**{¶50}** On July 9, 2020, after the parties filed their respective motions for summary judgment, United Ohio filed a motion to bifurcate pursuant to Civ.R. 42(B) claiming bifurcation of the bad faith claim is necessary to avoid prejudice from Maher having access to its internal claims file. Maher did not oppose the motion nor did he file a separate motion for bifurcation. The trial court did not rule on United Ohio's bifurcation request before issuing its decision granting United Ohio's motion for summary judgment on September 14, 2020.

**{¶51}** We presume the trial court overruled United Ohio's bifurcation motion. *See State ex rel. The V. Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998) ("when a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it.") The trial court has the discretion to grant or deny a motion to bifurcate, a decision reviewed by an appellate court under the abuse of discretion standard. *Am. Family Ins. Co. v. Hoop*, 4th Dist. Adams No. 13CA983, 2014-Ohio-3773, ¶ 50, citing *Prokos v.*

*Hines*, 4th Dist. Athens Nos. 10CA51 and 10CA57, 2014-Ohio-1415, ¶ 81.  An

abuse of discretion "is more than a mere error of law or judgment; it implies that a

trial court's decision was unreasonable, arbitrary or unconscionable."  *State v.*

*Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 27, citing

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶52} Maher relies solely on R.C. 2315.21(B) to claim the trial court erred

in denying United Ohio's motion to bifurcate because according to him, R.C.

2315.21(B) mandates automatic bifurcation as soon as the motion is filed.  First,

United Ohio's motion to bifurcate was requested per Civ.R. 42(B) and the motion

made no reference to R.C. 2315.21.  Second, R.C. 2315.21(B) applies when the

action is tried to a jury.  R.C. 2315.21(B)(1) states:

> In a tort action that *is tried to a jury* and in which a plaintiff makes a claim for compensatory damages and a claim for punitive or exemplary damages, upon the motion of any party, *the trial* of the tort action shall be bifurcated as follows:
>
> > (a) The initial stage of the trial shall relate only to the presentation of evidence, and a determination by the jury, with respect to whether the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant. During this stage, no party to the tort action shall present, and the court shall not permit a party to present, evidence that relates solely to the issue of whether the plaintiff is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.
> >
> > (b) If the jury determines in the initial stage of the trial that the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant, evidence may be presented in the second stage of the trial, and a determination by that jury shall be made, with respect to whether the plaintiff additionally is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.  (Emphasis added.)

**{¶53}** Maher demanded a jury trial when he filed his complaint, but the matter was resolved at summary judgment and no evidence was presented to a jury. *See Ford Motor Credit Co. v. Ryan & Ryan, Inc.,* 10th Dist. Franklin Nos. 17AP-304 and 17AP-375, 2018-Ohio-3960, ¶ 24 (R.C. 2315.21(B)(1) does not apply when the matter is tried to the bench since it only applies when the action is tried to a jury.)  We find that R.C. 2315.21(B) is inapplicable here.  As Maher fails to present any additional argument, we conclude that the trial court did not abuse its discretion when it denied United Ohio's motion to bifurcate.

**{¶54}** We further overrule Maher's assertion that he was denied the opportunity to review his insurance claims file.  Maher in his memorandum opposing United Ohio's motion for summary judgment stated that he did not request his claims file and that he would be entitled to it "only after the coverage issue under the insurance contract is determined."  But then in that same memorandum Maher "formally move[s] that a 56(F) stay be granted until after [he] has received the claims file to which he is entitled under the rule of *Boone.*" Maher, however, failed to submit an affidavit with his filing opposing United Ohio's motion for summary judgment as required in Civ. R. 56(F).  The rule provides:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

**{¶55}** The trial court did not rule on Maher's in-passing request to stay discovery.  By granting United Ohio's motion for summary judgment on all claims,

we presume the trial court denied Maher's request to stay discovery.  Maher fails

to present any argument that the trial court's denial was an abuse of discretion

and we do not find the trial court's decision to be arbitrary, unreasonable or

unconscionable.  *See Lawless v. Bd. of Educ. of Lawrence Cty. Educ. Serv. Ctr.,*

2020-Ohio-117, 141 N.E.3d 267, ¶ 29 (4th Dist.), *appeal not* accepted, 159 Ohio

St. 3d 1464, 2020-Ohio-3882, 150 N.E.3d 118 ("The court did not abuse

its discretion when it denied the motion to stay discovery.")

{¶56} We also hold that the trial court's decision granting United Ohio's

motion for summary judgment should be affirmed.[3]  Maher maintains that "the

case remains at too premature a stage to consider issues of bad faith" and relies

on the Fifth District Court of Appeals case in *Brown v. Nationwide Property &*

*Gas Ins. Co.,* 5th Dist. Stark No. 2014CA00037, 2014-Ohio-5057.  In *Brown,*

unlike the case at bar, the trial court granted the motion to bifurcate and stayed

the bad faith claim pending resolution of the breach of contract claim.  *Id.* at ¶ 31.

Here, we have no discovery request for the claims file, no stay as to discovery,

and no bifurcation.  What we have is United Ohio's motion for summary judgment

claiming it acted in good faith supported by an affidavit from its claims adjuster,

David Weithman.

---

[3] On the bad faith claim, the trial court did not provide any analysis and simply held that it grants
United Ohio's motion on all claims.  We find the lack of any analysis harmless since we review
the trial court's decision de novo. *See Phillips v. Dayton Power & Light Co.,* 93 Ohio App. 3d 111,
115, 637 N.E.2d 963 (2d Dist.1994) ("although a reasoned analysis by the trial court in
rendering summary judgment would be helpful, the lack of any analysis is
necessarily harmless since an appellate court's review of a summary judgment is *de novo.*")

**{¶57}** As we previously outlined in the first assignment of error, we review

de novo the trial court's decision on a motion for summary judgment.  *Gerken v.*

*State Auto Ins. Co. of* Ohio, 2014-Ohio-4428, 20 N.E.3d 1031, ¶ 35 (4th Dist.).

> "Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Snyder v. Stevens*, 4th Dist. Scioto No. 12CA3465, 2012-Ohio-4120, ¶ 11.
>
> Under Civ.R. 56(C), summary judgment is appropriate only if "'(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.'" *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15, quoting *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9.

*Id.* at ¶ 35-36.

**{¶58}** To prevail on his claim of bad faith, Maher must demonstrate that

United Ohio " 'lacked a reasonable justification for the manner in which it handled

[his] claims[.]' "  *Id.* at ¶ 47, quoting *Captain v. United Ohio Ins. Co.*, 4th Dist.

Highland No. 09CA14, 2010-Ohio-2691, ¶ 22.

> "An insurer lacks reasonable justification when it acts in an arbitrary or capricious manner." *Captain* at ¶ 30, citing *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 277, 452 N.E.2d 1315 (1983). The term "arbitrary" means "[w]ithout fair, solid, and substantial cause and without reason given; without any reasonable cause; in an arbitrary manner * * * fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment depending on the will alone; absolutely in power; capriciously; tyrannical; despotic." *Thomas v. Mills*, 117 Ohio St. 114, 121, 157 N.E. 488 (1927); *Captain* at ¶ 30. Similarly "caprice" is defined as " ' "[w]him, arbitrary, seemingly unfounded in motivation * * *." ' " *Captain* at ¶ 30, quoting *4D Investments, Inc. v. City of Oxford*,

12th Dist. Warren. No. CA98-04-082, 1999 WL 8357, *2, in turn quoting *Black's Law Dictionary* 192 (5th Ed.1979).

*Id.* at ¶ 48.

**{¶59}** When considering the merit of the bad faith claim, there is no genuine issue of material fact since the only evidence outlining the investigation of Maher's claim by United Ohio was Weithman's uncontradicted affidavit.  In his affidavit, Weithman confirmed that Maher reported a claim under the policy on February 13, 2019, and that a denial letter dated July 12, 2019, was mailed that same day to Maher's counsel.  Weithman detailed the progress of the investigation during that five-month period.

**{¶60}** On the same day that Maher requested coverage under the policy, Weithman reviewed the policy and contacted Maher's counsel's office. Weithman was advised that Maher was a passenger in the Buggy and that the Buggy was not insured.  During that phone conversation, Weithman requested a copy of the accident report and advised counsel's office that coverage may not be available since it is a commercial auto policy.  Weithman that same day also contacted Maher's insurance agent and requested a certified copy of Maher's commercial auto insurance policy and a copy of any auto policy under Maher's name.  On February 15, 2019, Weithman received a certified copy of Maher's commercial auto insurance policy and emailed Maher's counsel's office with a duplicate.  Weithman also telephoned counsel's office and left a voice message requesting information regarding Maher's personal auto insurance.

**{¶61}** Weithman asked his unit manager, Donna Elliott, to review the file. She agreed that under the coverage selection of symbol 7, the Buggy would not

be covered under Maher's commercial auto policy. She also questioned whether Maher had a personal auto insurance policy. After not hearing back from Maher's counsel's office, on May 1, 2019, Weithman contacted counsel and spoke with staff member Karen. Weithman reiterated that the commercial auto policy was limited to a covered auto and the Buggy was not a listed auto in the policy. Karen confirmed that Maher did not have any other auto policies.

{¶62} Discussions between Weithman and Maher's counsel's office continued and on June 28, 2019, Weithman advised Maher's counsel that the claim will be reviewed with management at United Ohio and a decision as to coverage will be forthcoming. On July 12, 2019, Weithman prepared a letter denying coverage concluding that the Buggy was not a covered auto under the policy. The letter was mailed to Maher's counsel's office that same day.

{¶63} Applying the standards set forth for granting a motion for summary judgment and Maher's burden to demonstrate United Ohio acted arbitrarily or in a capricious manner on his claim for bad faith, we hold that United Ohio as a matter of law is entitled to judgment on the bad faith claim. There is no evidence United Ohio's denial of coverage was without a fair review of the claim and without substantial cause. To the contrary, Weithman's affidavit establishes that several of United Ohio's staff members reviewed the policy in light of Maher's request for medical expenses. United Ohio also maintained contact with Maher's counsel and kept him advised of the investigation. Moreover, our holding under the first assignment of error that Maher was not entitled to coverage supports the conclusion that United Ohio did not arbitrarily deny his claim.

**{¶64}** Accordingly, Maher's second assignment of error is overruled and we affirm the trial court's decision granting United Ohio's motion for summary judgment on the bad faith claim.

CONCLUSION

**{¶65}** Having overruled Maher's two assignments of error, we affirm the trial court's judgment entry granting United Ohio's motion for summary judgment.


**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Abele, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**